**Frances Noreen ELDER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–97–00769–CR.**

Court of Appeals of Texas,
San Antonio.

April 7, 1999.

---

Gregory A. Richards, Gregory Richards, P.C., Kerrville, for appellant.

Ronald L. Sutton, Dist. Atty., Donnie J. Coleman, Asst. Dist. Atty., Junction, for appellee.

Before CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: PAUL W. GREEN, Justice.

Frances Elder lived with Bert Timms who was on probation for indecency with a child. After Timms assaulted Elder's daughter, Elder was indicted with endangerment of a child. A jury convicted Elder, and the trial court sentenced her to two years confinement, probated for five years, plus twenty days in jail. On appeal, Elder contends there is no evidence she placed her child in imminent danger. We agree. Accordingly, we reverse the trial court's judgment and render a judgment of acquittal.

### Background

In 1993, Timms was placed on eight years deferred adjudication probation for indecency with a sixteen-year-old child. His contact with children, other than the complainant, was not restricted. In May 1996, Timms obtained custody of his two-year-old son. In June, Timms moved in with Elder and her five children.

In July, Timms's probation officer, Sean Finn, asked Elder to sign a release, which stated:

> It has been explained to me . . . that the Defendant Bert Timms, has been placed on probation for the offense of indecency. Furthermore, I understand that a condition of the Court Order prohibits Bert Timms from having any contact with any child, male or female, under eighteen (18) years of age, unless in the presence of the child's parent, guardian, or managing conservator and with the specific approval of the parent, guardian, or managing conservator submitted in writing. . . . Therefore, I, Frances Noreen Elder, am giving Bert Timms permission to have contact with my children . . . while under my direct supervision. Therefore, I accept full responsibility during such contact, and release the Community Supervisions and Corrections Department, its agents, officers, and employees from any and all

liabilities that may arise from such contact.

I understand that if the Defendant, Bert Timms, engages in any inappropriate sexual contact with my children . . . that I may be criminally responsible for facilitating that contact and may be prosecuted.

Finn did not tell Elder he thought Timms was harmless; nor did he tell her there was a possibility he might repeat his offense. On the other hand, Elder did not ask for additional information.

In January 1997, Elder's nine-year-old daughter alleged that Timms sexually assaulted her. On February 11, Child Protective Services investigated the incident and obtained a confession from Timms. Two days later Timms and Elder were indicted. Timms was tried first and found guilty of attempted aggravated sexual assault of a child.

## Discussion

In her first point of error, Elder maintains there is no evidence she placed her child in imminent danger. We agree.

In reviewing legal sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict and ask whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We consider all the evidence introduced, whether properly admitted or not. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993). Finally, we look at the circumstances surrounding the offense objectively rather than subjectively. *Herbst v. State*, 941 S.W.2d 371, 373 (Tex.App.—Beaumont 1997, no pet.).

As the jury was charged, the State was required to prove beyond a reasonable doubt that Elder "intentionally or knowingly" placed her daughter "in imminent danger of bodily injury or physical or mental impairment" by putting her "in a home environment which included a known child molester." *See* TEX. PENAL CODE ANN. § 22.041(c) (Vernon 1994). The word "imminent" means "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim.App.1989); *see also Garcia v. State*, 819 S.W.2d 634, 636 (Tex.App.—Corpus Christi 1991, no pet.) (defining "imminent" as present, not future, threat).

The evidence, when viewed objectively and in the light most favorable to the verdict, shows that Elder began living with Timms shortly after he obtained custody of his two-year-old son. Elder knew Timms was on probation for indecency with a child, and she signed a release indicating she would supervise Timms's contact with her children. There is no evidence that Timms posed a danger to children, other than the fact of his probation. There is no evidence about Timms's relationship with Elder's daughter, nor is there any evidence describing his assault on the child and what role, if any, Elder played in the circumstances surrounding the incident. Finally, there is no expert testimony describing Timms as a pedophile or alleging he could not be rehabilitated. From this scant evidence, no rational juror could have found the element of imminent danger beyond a reasonable doubt. *Cf. Broussard v. State*, 827 S.W.2d 619, 622 (Tex.App.—Corpus Christi 1992, no writ) (holding that possibility of harm is not "imminent risk" for purposes of involuntary commitment).

## Conclusion

Essentially, the State urges us to hold that, as a matter of law, a parent cannot live with a "known child molester" without putting her child in imminent danger. We decline the State's invitation. Accordingly, we sustain Elder's first point of error. It is therefore unnecessary to address her second point of error regarding use immunity. *See* TEX.R.APP. P. 47.1. We reverse the trial court's judgment and render a

judgment of acquittal. *See* Tex.R.App. P. 43.2(c).

Concurring opinion by: CATHERINE STONE, Justice.

CATHERINE STONE, Justice, concurring.

Because the record fails to establish beyond a reasonable doubt that Frances Elder placed her child in imminent danger, I agree with the majority opinion rendering an acquittal. I write separately, however, because I believe this case propels Texas into the middle of an important public dialogue about prosecution of passive parents whose children are abused by spouses or partners.

Within the last decade, legal commentators have devoted a great amount of attention to the question of how to legally respond to parents who "allow" their children to be abused by the parent's partner. *See, e.g.,* Michelle S. Jacobs, *Requiring Battered Women to Die: Murder Liability for Mothers Under Failure to Protect Statutes,* 88 J.Crim. L. & Criminology 579 (1998); Rebecca J. Fialk & Audrey E. Stone, *Handling the Domestic Violence Case, in* Estate Planning and Administration 1998 (PLI Tax Law & Estate Planning Course Handbook Series No. 271, 1998); Note, *Punishing the Passive Parent: Ending a Cycle of Violence,* U. Mo. KC L.Rev. 1003 (1997). Charges of gender bias against women have entered into the dialogue, with the complaint that the legal system expects perfection of mothers—they are to protect their children from harm at all costs. A mother's failure to protect her child is deemed inexcusable. *See* Bonnie E. Rabin, *Violence Against Mothers Equals Violence Against Children: Understanding the Connections,* 58 Alb. L.Rev. 1109, 1115 (1995). As noted by one commentator, "[w]hen courts intervene to protect the child, they typically blame the mother for not removing the child from the abusive household, instead of focusing on the husband's obligation to cease the violence. This blaming is espe-cially common where the child has been abused, and the mother has not reported the abuse." Rebecca J. Fialk & Audrey E. Stone, *Handling the Domestic Violence Case, in* Estate Planning and Administration 1998, at 340 (PLI Tax Law & Estate Planning Course Handbook Series No. 271, 1998). When the mother herself is a victim of domestic violence, she is victimized further with criminal prosecution for child neglect or endangerment or with loss of parental rights. *Id.* at 335–36.

Contrary to the "mothers as victims" construct, is the view that passive parents are not simply innocent bystanders. Had such parents taken some action, they could have prevented the fatal blow or minimized the child's damages. *See* Note, *Punishing the Passive Parent: Ending a Cycle of Violence,* U. Mo. KC L.Rev. 1003, 1004 (1997). This view promotes a system of "failure to protect" and endangerment laws holding passive parents criminally accountable for permitting child abuse or failing to prevent the abuse. *Id.* The promoters of this "accountability view" recognize, however, that failure to protect and endangerment laws are often inadequate to address the "cycle of domestic violence that often plagues these families...." *Id.* In short, even advocates of greater accountability for passive parents realize that a battered mother may be greatly limited in choices and opportunities to protect her child.

While there is no evidence in this record that Elder was ever the victim of domestic violence, there is evidence that she was impeded by her refusal to believe her daughter when she accused Timms of sexual abuse. Elder's refusal to believe her daughter is apparently not an uncommon turn of events, which the literature describes as "denial"—a psychologically incapacitating state experienced by some mothers when confronted with the claim that their partner is sexually abusing the mother's child. The state of denial can prevent a mother from acknowledging the abuse or preventing its continuance.

Christine Adams, *Mothers Who Fail to Protect Their Children From Sexual Abuse: Addressing the Problem of Denial,* 12 YALE L. & POL'Y REV. 519, 520 (1994).

The child endangerment statute under which Elder was prosecuted appears to place Texas within the ranks of states that seek to hold passive parents criminally accountable for their failure to protect their children from harm or abuse. The statute offers no specific affirmative defense for battered parents or parents in denial, yet safeguards are provided by the scienter requirement of "intentionally, knowingly, recklessly, or with criminal negligence." TEX. PEN.CODE ANN. § 22.041(c) (Vernon 1994). A further safeguard is apparent in requiring the State to prove that the accused place the child in "imminent" danger. Imminent danger is not, as the State stated during closing argument, danger that will happen "sooner or later." As the majority noted, "imminent" means "near at hand, hanging threateningly over one's head." *See Devine v. State,* 786 S.W.2d 268, 270 (Tex. Crim.App.1989) (citing BLACK'S LAW DICTIONARY 676 (rev. 5th ed.1979)).

The internal safeguards found within Texas' statute appear adequate to address the legal dilemmas faced by battered women or parents in denial. A further safeguard, one that would protect not only the passive parent, but which would also protect the most vulnerable party—the child—is to provide the passive parent with educational opportunities. In the instant case the State elected to undertake preventative measures when Timms' probation officer met with Elder and provided her with notice of Timms' prior criminal history.[1] Unfortunately, this preventative measure was unsuccessful. Perhaps making information available to Elder about parenting skills, or requesting that she participate in Timms' on-going treatment

regarding his prior abusive conduct would have prevented the abuse of Elder's daughter. *See* Christine Adams, *Mothers Who Fail to Protect Their Children From Sexual Abuse: Addressing the Problem of Denial,* 12 YALE L. & POL'Y REV. 519, 520 (1994) (extolling virtues of psychiatric treatment and education over prosecution of passive parents). While local communities have limited funds and manpower to provide all that is optimally desired, every dollar spent in preventative and educational endeavors is money well-spent when compared with the enormous personal and societal costs associated with the evils of domestic violence and sexual abuse.

1. While having Elder sign the notice from the probation office had the laudable goal of notifying Elder about Timms' history and at least raising her awareness of possible risks to her children, Timms' probation officer stated that the notice was also designed to protect the probation office from legal liability in the event of inappropriate conduct by Timms.