NUMBER 13-04-368-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JULI ANN VREELAND, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 107th District Court of Cameron County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Castillo


Memorandum Opinion by Chief Justice Valdez


 

 Following a jury trial, appellant, Juli Ann Vreeland, was found guilty of endangering
a child. Tex. Pen. Code Ann. § 22.041(c) (Vernon Supp. 2006). The trial court assessed
appellant's punishment at two years incarceration in the Texas Department of Criminal
Justice-State Jail Facility. By two issues, appellant argues that the evidence is legally and
factually insufficient to support her conviction. We affirm the judgment of the trial court.

Standard of Review


 In a legal sufficiency review, we consider all of the properly or improperly admitted
evidence in the light most favorable to the verdict and determine whether, based on that
evidence and reasonable inferences therefrom, a rational jury could have found the
accused guilty of the essential elements of the offense beyond a reasonable doubt.
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Swearingen v. State, 101 S.W.3d 89, 97
(Tex. Crim. App. 2003) (en banc). We measure the legal sufficiency of the evidence by the
elements of the offense as defined by a hypothetically correct jury charge. Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is one
that accurately sets out the law, is authorized by the indictment, does not unnecessarily
increase the State's burden of proof or restrict its theories of liability, and adequately
describes the particular offense for which the defendant was tried. Id.

 In conducting a factual sufficiency review, we view all of the evidence in a neutral
light, without favoring either party. Johnson v. State, 23 S.W.3d 1, 6-7 (Tex. Crim. App.
2000) (en banc). We must determine whether, considering all of the evidence, the jury was
rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004). There are two ways in which the evidence may be
insufficient. Id. First, when considered by itself, evidence supporting the verdict may be
too weak to support a finding of guilt beyond a reasonable doubt. Id. Second, weighing
the evidence contrary to the verdict against the evidence supporting the verdict, the
contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard
could not have been met. Id. at 485. When reversing for factual insufficiency, we must
detail all the evidence relevant to the issue and clearly state why the jury's finding is either
factually insufficient or is so against the great weight and preponderance of the evidence
that it is manifestly unjust. Johnson, 23 S.W.3d at 9. 

 Under both legal and factual sufficiency standards, "the jury is the exclusive judge
of the credibility of witnesses and of the weight to be given to testimony, and it is also the
exclusive province of the jury to reconcile conflicts in the evidence." Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc); see Tex. Code Crim. Proc. Ann.
art. 38.04 (Vernon 1979).

Background


 On July 30, 2003, at approximately 6:15 a.m., appellant placed her two-month-old
daughter in her car seat carrier in her apartment, then took the carrier to her car, a small
four-door Mitsubishi Lancer, and installed the car seat in its base in the middle position of
the back seat. The car seat faced the rear of the car. Appellant drove her mother to a
convenience store where her mother was going to be picked up for transportation to her
job. Appellant dropped her mother off without getting out of the car. Appellant then drove
back to her home and went into the house at approximately 6:50 a.m. Appellant failed to
remove her daughter from the car. 

 Appellant took a nap, waking at around 10:00 a.m. She ate, showered, and spoke
on the telephone to two of her friends. At around 12:30 p.m., appellant returned to the
Lancer and used it to run a number of errands. She drove to the post office, where she
picked up her mail and purchased a money order, to the Texas Workforce Center, where
she obtained copies of her resume, to a grocery store training center, where she attempted
to apply for a job, and finally, to Target, where she spent approximately forty-five minutes
completing and submitting a job application. At each of these stops, she entered and
exited the car utilizing her car keys to lock and unlock the car. She placed her mail and
resumes on the front passenger car seat. 

 At Target, when she returned to the Lancer at approximately 1:30 to 2:00 p.m., she
discovered her daughter, still in the car seat, in the car. When found, the child was
deceased. The medical examiner estimated that the child died at approximately noon with
a one-hour margin of error. It was a very hot summer day; the temperature was in the high
90s, and an autopsy showed that the cause of death was heat stroke. Immediately
following the discovery of the child, a crime scene investigator measured the temperature
of the interior of the car, while parked, not running, with the windows and doors shut. The
temperature was measured at 103.3 degrees at approximately 2:45 or 3:00. The
temperature in the car rose to more than 120 degrees within approximately twenty minutes
once the car doors were closed. A police investigator testified that it was not reasonable
to leave an infant in the car, particularly during the heat of summer. 

 Appellant testified that when she first saw her daughter's body, she thought she was
hallucinating because she thought she had dropped her daughter off at day care when she
took her mother to the convenience store. Appellant had taken the child to day care daily,
Monday through Friday, for almost a month prior to the incident. Each day, she left the
infant and the carrier at the day care. She never left the infant without also leaving the
carrier.

 Upon seeing her daughter, appellant began yelling for help. Target customers
approached her, including a paramedic, who immediately recognized that the infant was
deceased. The infant was pale; had blood and froth coming from her nose and mouth;
showed signs of liver mortis, that is, blood pooling on the backs of her legs and arms; rigor
mortis, or stiffness; and skin slippage, a facet of decomposition which presented in
appearance as burns or scrapes on the infant's legs. 

 Some witnesses questioned appellant's reaction to the death. Appellant was yelling
for help and seemed angry and was cursing. She did not immediately cry, and her
demeanor was calm. 

 Appellant explained that she was preoccupied and had forgotten that her daughter
was still in the backseat of the vehicle. She was concerned about her finances and about
obtaining a job and she was suffering from a toothache. Appellant was under some
financial duress and needed a job, and was trying to prepare for the loss of some of her
financial benefits relating to the baby. She was fatigued from having stayed up late the
previous evening and having to wake in the middle of the night to feed her daughter. She
was also taking a prescription antihistamine which caused drowsiness. Other witnesses
testified that appellant wanted the baby, was delighted with her, and was a good mother. 
The child showed no previous signs of abuse and always seemed to be clean and well-fed.

 At trial, several witnesses testified that the car seat was easily visible from outside
of the car, that it was "immediately obvious," and that "anybody could have clearly seen
[the infant]." An investigating police officer sat in the driver's seat of the vehicle and could
see the car seat in his rear-view mirror. Photographs of the car's interior show the car seat 
was immediately adjacent to the two front bucket seats of the car and, in fact, extruded into
the front seat in the space between the two front bucket seats of the car. An investigator
testified that he found the incident "highly" suspicious, given that the child had been in the
car for approximately eight hours. The Lancer is a small vehicle, without tinted windows,
and the car seat was bulky and obvious. Further, appellant entered and exited the vehicle
a total of nine times without apparently seeing the child in the carrier. 

 Analysis 


 Appellant contends that the evidence is legally and factually insufficient to show that
she intentionally, knowingly, recklessly, or with criminal negligence, engaged in conduct
that placed the child in imminent danger. According to appellant, none of the State's
witnesses had personal knowledge or presented direct evidence of the alleged offense
because the witnesses all testified as to their observations after the child was found dead
in appellant's vehicle. 

 The indictment alleges that appellant did:

 intentionally, knowingly, recklessly, or with criminal negligence, engage in
conduct that placed Catherine Jade Ann Vreeland, a child younger than 15
years of age, in imminent danger of death, bodily injury, or physical or mental
impairment, by leaving said Catherine Jade Ann Vreeland, a child younger
than six months of age, alone in an automobile without adequate cooling or
ventilation in a place which caused the temperature in said vehicle to rise to
a level dangerous to human life, and the defendant did not voluntarily deliver
the child to a designated emergency infant care provided under Section
262.302, Family Code.


The Texas Penal Code provides that a person commits the offense of endangering a child
if she "intentionally, knowingly, recklessly, or with criminal negligence, by act or omission,
engages in conduct that places a child younger than 15 years in imminent danger of death,
bodily injury, or physical or mental impairment." Tex. Pen. Code Ann. § 22.041(c) (Vernon
Supp. 2006). (1)
 "Imminent" means "ready to take place, near at hand, impending, hanging
threateningly over one's head, menacingly near." See Devine v. State, 786 S.W.2d 268,
270 (Tex. Crim. App. 1989). It is not sufficient that an accused place a child in a situation
that is potentially dangerous. Millslagle v. State, 81 S.W.3d 895, 898 (Tex. App.-Austin
2002, pet. ref'd) (holding that defendant did not place child in danger by leaving child in
locked car unattended while defendant was ingesting narcotics in nearby bathroom). The
accused's conduct must threaten the child with immediate, impending death, bodily injury,
or impairment. See Elder v. State, 993 S.W.2d 229, 230 (Tex. App.-San Antonio 1999,
no pet.) (holding that defendant did not place her eight-year-old daughter in imminent
danger by permitting man on probation for indecency with a child to move into their home). 
The statute does not require proof that the person intend or know that his conduct places
the child in such imminent danger. Contreras v. State, 54 S.W.3d 898, 905-06 (Tex.
App.-Corpus Christi 2001, no pet.); see Walker v. State, 95 S.W.3d 516, 521 n.1 (Tex.
App.-Fort Worth 2002, pet. ref'd); but see Millslagle, 81 S.W.3d at 896 n.1
("Notwithstanding the phrase 'engages in conduct that,' section 22.041(c) appears to be
a 'result of conduct' offense."). 

 Appellant's legal and factual sufficiency challenges appear to attack the lack of
direct evidence supporting appellant's conviction. However, circumstantial evidence, by
itself, may be enough to support the jury's verdict. Kutzner v. State, 994 S.W.2d 180, 184
(Tex. Crim. App. 1999); see Smith v. State, 965 S.W.2d 509, 515 (Tex. Crim. App. 1998).
It is not necessary that every fact point directly and independently to the defendant's guilt;
rather, it is enough if the conclusion is warranted by the combined and cumulative force
of all the incriminating circumstances. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim.
App. 1994). Further, it is axiomatic that a conviction may be based on circumstantial
evidence. See Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001) (stating a
conviction may rest on the cumulative strength of all incriminating circumstances).

 With the exception of some slight discrepancies in estimates regarding the timing
of appellant's actions and some differing accounts regarding appellant's reaction to her
daughter's death, the evidence in this case was largely undisputed. It is clear that
appellant's infant daughter remained in the vehicle for approximately eight hours on a hot
summer day in which temperatures outside the vehicle climbed into the high 90s, and
temperatures inside the closed vehicle rapidly rose to more than 120 degrees after closing
the car doors. The infant suffered heat stroke and died. Appellant admitted that she forgot
to take the child to day care and instead left the infant in the vehicle. When viewed in the
light most favorable to the verdict, a rational jury may have concluded that appellant
recklessly or with criminal negligence, by act or omission, engaged in conduct that placed
the infant in imminent danger of death, bodily injury, or physical or mental impairment. 
Tex. Pen. Code Ann. § 22.041. Accordingly, the evidence is legally sufficient to support
the judgment. Appellant's first issue is overruled.

 Viewing all of the evidence in a neutral light, without favoring either party, we also
conclude that the evidence is factually sufficient to support the verdict. Appellant and her
mother testified that appellant wanted the infant and was pleased with her birth. Workers
from the infant's day care testified that appellant appeared to be a loving mother and that
the child was clean and well-fed when delivered to the day care. Appellant testified to
physical discomfort, distraction, fatigue, and drowsiness on the day of the incident.
Appellant further testified to her grief and shock at the discovery of her daughter's body. 
However, the circumstances surrounding the infant's demise were suspicious insofar as
the vehicle was small, the car seat abutted the driver's seat, and was visible from the
driver's perspective in the rear-view mirror. The car seat and infant were "immediately
obvious" and "clearly" visible to viewers outside of the vehicle. Despite all of this, appellant
failed to discover the infant in the car although she ran several errands in the car, and
entered and exited the car nine times before discovering the infant on the tenth entry to the
car. The jury is the exclusive judge of the credibility of witnesses and of the weight to be
given to testimony, and it is also the exclusive province of the jury to reconcile conflicts in
the evidence. Wesbrook, 29 S.W.3d at 111; see Tex. Code Crim. Proc. Ann. art. 38.04. 
Given the evidence previously detailed, we will not disturb the jury's verdict. Accordingly,
we overrule appellant's second issue.

Conclusion


 Considering all of the evidence and reasonable inferences therefrom in the light
most favorable to the verdict, we conclude that a rational jury could have found the
accused guilty of the essential elements of the offense beyond a reasonable doubt.
Jackson, 443 U.S. at 319; Swearingen, 101 S.W.3d at 97. Further, viewing all of the
evidence in a neutral light, without favoring either party, Johnson, 23 S.W.3d at 6-7, we
conclude that the jury was rationally justified in finding guilt beyond a reasonable doubt. 
Zuniga, 144 S.W.3d at 484. 

 The judgment of the trial court is AFFIRMED.



 

 ROGELIO VALDEZ

 Chief Justice



Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this the 26th day of October, 2006. 



1. The statute allows conviction if an individual is criminally negligent or reckless. Under the penal
code:


 A person acts with criminal negligence, or is criminally negligent, with respect to
circumstances surrounding his conduct or the result of his conduct when he ought to be
aware of a substantial and unjustifiable risk that the circumstances exist or the result will
occur. The risk must be of such a nature and degree that the failure to perceive it constitutes
a gross deviation from the standard of care that an ordinary person would exercise under all
the circumstances as viewed from the actor's standpoint. 


Tex. Pen. Code Ann. § 6.03(d) (Vernon 2003). 


 A person acts recklessly with respect to the result of her conduct when she is aware of but
consciously disregards a substantial and unjustifiable risk that the result will occur. The risk
must be of such a nature and degree that its disregard constitutes a gross deviation from the
standard of care that an ordinary person would exercise under all the circumstances as
viewed from the actor's standpoint. 


Id. § 6.03(c) (Vernon 2003).