Opinion issued April 12, 2007
















Opinion
issued April 12, 2007










 

 

 

 














 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-05-00813-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JERRY STEINECKE, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 

 



On Appeal from the 25th District Court

Colorado County, Texas

Trial Court Cause No. CR01-223

 








 



MEMORANDUM OPINION

 

Appellant Jerry
Steinecke pleaded not guilty to two counts of the felony offense of endangering
a child.  See Tex. Pen. Code Ann.
§ 22.041 (Vernon
Supp. 2006).  A jury found Steinecke
guilty on both counts and the trial court assessed punishment at two years’
confinement and a $500 fine, but probated the sentence for five years.  In four issues, Steinecke contends the
evidence is legally and factually insufficient to support the jury’s finding
that he intentionally, knowingly, recklessly, or with criminal negligence
engaged in conduct that placed his children in imminent danger of death, bodily
injury, or physical or mental impairment. 
We conclude that the evidence is legally and factually sufficient to
support the jury’s finding that Steinecke acted with criminal negligence and
engaged in conduct by omission that placed his children in imminent danger of
death, bodily injury, or physical or mental impairment.  We therefore affirm.  

Background

          On
the evening of March 20, 1999, Ramona Ray was driving with her son Matthew on
County Road 103 in Colorado County.  Matthew and Ramona noticed that a vehicle was
stuck on the railing of a bridge so they stopped to render aid.  Steinecke was the driver of the disabled
vehicle, and his two children, R.S. and D.S., were riding in the backseat.  R.S. was five years old and D.S. was two
years old.  Matthew lifted the back of
Steinecke’s vehicle and Steinecke was able to drive away from the railing and
down an embankment.  The embankment, however,
was too steep for Steinecke’s vehicle to climb and it eventually became stuck
in some mud.  Steinecke then walked up
the embankment and used Ramona’s cellular telephone to call his insurance
company.  Steinecke left R.S. and D.S. in
the backseat.  Ramona then flagged down a
truck for additional assistance because she thought that Steinecke was acting
strangely.  Thad Stehling was the driver
of the truck.  Ramona testified that
while Stehling was talking with Steinecke, she noticed flames coming from underneath
Steinecke’s vehicle.  Ramona then alerted
Stehling that there were children in Steinecke’s vehicle.  Stehling and Matthew ran down the embankment
and pulled the children to safety. 
Ramona did not recall Steinecke assisting in the rescue, nor did she
hear Stehling ask Steinecke if anyone was in his vehicle.  

          Matthew
did not recall Ramona telling Stehling that there were children in Steinecke’s
vehicle.  Instead, after the vehicle
caught fire, Matthew heard Stehling ask Steinecke at least three times if
anyone was in his vehicle.  When
Steinecke finally replied affirmatively, Stehling ran down the embankment and
rescued the two children.  Matthew also
did not recall if Steinecke helped with the rescue.      

          Stehling
testified that as soon as he arrived at the scene, he noticed that Steinecke’s
vehicle was filling with smoke and had fire underneath it.  Stehling never heard Ramona say that children
were in Steinecke’s vehicle.  Stehling
asked Steinecke if anyone was in the burning vehicle but Steinecke just stared
at the vehicle and did not reply. 
Stehling asked again if anyone was in the vehicle but Steinecke just
jokingly mumbled, “Man, look at my car.” 
Stehling finally asked a third time if anyone was in the vehicle and
Steinecke looked right at him and yelled, “Yes, two babies.”  Stehling testified that three or four minutes
elapsed during this conversation. 
Stehling then immediately ran to the vehicle and removed Steinecke’s two
children.  Stehling also testified that
Steinecke followed him down the hill and assisted with the rescue.  Stehling testified that Steinecke seemed
intoxicated during the incident.  

          Police
officers and the fire department arrived at the scene shortly thereafter.  Officer C. Zermeno immediately noticed that
Steinecke looked intoxicated.  Zermeno
also smelled alcohol when he interviewed Steinecke.  Steinecke acted strangely throughout the
interview and he told Zermeno that he was in the area because he was
fishing.  Officers J. Pavlicek and A.
Owens spoke with Steinecke at the scene as well and both testified that
Steinecke looked intoxicated and his breath smelled like alcohol.  After Zermeno interviewed the other
witnesses, he arrested Steinecke and took him to the police station.  At the police station, Zermeno administered
several sobriety tests, all of which Steinecke failed.  Officer R. Korenek administered an
Intoxilyzer test on Steinecke, which measured his blood alcohol level at
.087.  In March of 1999, a blood alcohol
level of .087 was not above the legal limit. 
Korenek administered the Intoxilyzer test at 11:44 p.m., three and
one-half hours after police were first called to the scene.  

          Steinecke’s
account of the events was similar to Ramona’s, but substantially different from
Stehling’s and Matthew’s accounts. 
Steinecke testified that he was taking his daughters to his father’s birthday
party on the day of the incident.  He
stopped at the bridge to look at the fish in the creek below because the
traffic on the freeway was bad. 
Steinecke testified that his vehicle accidentally became stuck on the
rail of the bridge while he was backing up. 
After Ramona and Matthew stopped and helped him remove his vehicle from
the rail, Steinecke drove down the embankment where the vehicle became stuck in
the mud.  Steinecke admitted that he then
drank some tequila because he was frustrated. 
Steinecke was standing on the bridge attempting to call his insurance
company when Stehling arrived.  Steinecke
testified that Stehling walked past him without saying anything and began
talking to Ramona and Matthew.  Stehling
was dressed in camouflage and had a pistol in a holster at his side.  Ramona then said something about a fire and
Stehling and Steinecke immediately ran down to the vehicle.  Steinecke arrived at the vehicle first and
removed both R.S. and D.S.  Steinecke
testified that smoke was not inside the passenger compartment when he opened
the door.  Stehling carried R.S. up the
embankment while Steinecke carried D.S. 
Steinecke then removed his belongings from the vehicle, including the
children’s toys and the bottle of tequila. 
Steinecke tried to push the vehicle away from the fire but he burned his
hand.  He then drank some more tequila
for the pain.  

Legal and Factual Sufficiency

          In
four issues, Steinecke contends the evidence is legally and factually
insufficient to support the jury’s finding that he intentionally, knowingly,
recklessly, or with criminal negligence engaged in conduct that placed R.S. and
D.S. in imminent danger of death, bodily injury, or physical or mental
impairment.  

Standard of Review

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795, 798 (Tex.
Crim. App. 2005).  The standard is the
same for both direct and circumstantial evidence cases.  King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See
Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim.
App. 1991).  Instead, our duty is to
determine whether both the explicit and implicit findings of the trier of fact
are rational by viewing all the evidence admitted at trial in the light most
favorable to the verdict.  Adelman, 828 S.W.2d at 422.  In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. 
Matson, 819
S.W.2d at 843.

When conducting a factual
sufficiency review, we view all of the evidence in a
neutral light.  Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App.
1999).  We will set the verdict aside
only if (1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000).  Under the first prong
of Johnson, we cannot
conclude that a verdict is “clearly wrong” or “manifestly unjust” simply
because, on the quantum of evidence admitted, we would have voted to acquit had
we been on the jury.  Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Under the second prong of Johnson, we cannot declare that a conflict
in the evidence justifies a new trial simply because we disagree with the
jury’s resolution of that conflict.  Id.  Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury’s verdict. 
Id.  In conducting a factual
sufficiency review, we must also discuss the evidence
that, according to the appellant, most undermines the jury’s verdict.  See Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).  

We may not re-weigh the evidence and substitute
our judgment for that of the fact-finder. 
King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App.
2000).  The fact-finder alone determines
what weight to place on contradictory testimonial evidence because that
determination depends on the fact-finder’s evaluation of credibility and
demeanor.  Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim.
App. 1997).  As the determiner of the
credibility of the witnesses, the fact-finder may choose to believe all, some,
or none of the testimony presented.  Id.
at 407 n.5.

Endangering a Child

A person commits the offense of endangering a
child if he “intentionally, knowingly, recklessly, or with
criminal negligence, by act or omission, engages in conduct that places a child
younger than 15 years in imminent danger of death, bodily injury, or physical
or mental impairment.”  Tex. Pen. Code Ann. 
§ 22.041(c).  “Imminent” means “ready to take place, near at
hand, impending, hanging threateningly over one’s head, menacingly near.”  Devine v. State, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989); Rodriguez
v. State, 137 S.W.3d 758, 761 (Tex. App.—Houston
[1st Dist.] 2004, no pet.); Millslagle v. State,
81
S.W.3d 895, 898 (Tex. App.—Austin 2002, pet. ref’d); Elder v. State, 993 S.W.2d 229, 230
(Tex. App.—San Antonio 1999, no
pet.).  The accused’s conduct must
threaten the child with immediate, impending death, bodily injury, or
impairment; placing a child in a situation that involves potential danger is
not sufficient.  Millslagle, 81 S.W.3d at 898 (holding that defendant did not
place three-year-old son in imminent danger by leaving him alone in truck with
windows slightly open near busy intersection); Elder, 993 S.W.2d at 230
(holding that defendant
did not place eight-year-old daughter in imminent danger by permitting man on
probation for indecency with child to move into home she shared with her
children).  

“A person commits an
offense [under the Texas Penal Code] only if he voluntarily engages in conduct,
including an act, an omission, or possession.”  Tex. Pen. Code Ann. § 6.01(a) (Vernon
2003).  “A person who omits to perform an act does not
commit an offense unless a law . . . provides that the omission is an offense
or otherwise provides that he has a duty to perform the act.”  Id.
§ 6.01(c).  A parent has
the duty of care, control, protection, and reasonable discipline of his
child.  Tex.
Fam. Code Ann. § 151.001(a)(2) (Vernon Supp. 2006).  A parent appointed as a conservator of a child
has the duty of care, control, protection, and reasonable
discipline of the child
during the period that the parent has possession of the child.  Id. §
153.074(1) (Vernon
Supp. 2006).  “Voluntary
intoxication does not constitute a defense to the commission of crime.”  Tex.
Pen. Code Ann. 
§ 8.04(a) (Vernon 2003).  

Texas Penal Code section 6.03(d) provides: 

A person acts with criminal negligence, or is
criminally negligent, with respect to circumstances surrounding his conduct or
the result of his conduct when he ought to be aware of a substantial and
unjustifiable risk that the circumstances exist or the result will occur.  The risk must be of such a nature and degree
that the failure to perceive it constitutes a gross deviation from the standard
of care that an ordinary person would exercise under all the circumstances as
viewed from the actor’s standpoint.

 

Id. § 6.03(d) (Vernon 2003).  

          No Duty

In his appellate brief, Steinecke asserts
that he had no duty to rescue his children from the burning car, and thus his
failure to immediately attempt a rescue of his children is not evidence of
endangerment.  The evidence in this case is
undisputed, however, that Steinecke was the possessory conservator of his two
daughters, R.S. and D.S., and that Steinecke was in possession of R.S. and D.S.
on the day of the incident.  These facts gave rise to
Steinecke’s duty of care, control,
protection, and reasonable discipline over the children.  Tex.
Fam. Code Ann. 
§ 153.074(1).  The Texas Penal Code then
imposed an obligation on Steinecke to avoid conduct by act or omission that
placed the children in imminent danger of death, bodily injury, or physical or
mental impairment.  See Tex. Pen. Code Ann.
§ 22.041(c); see also id. § 6.01(c) (“A person who omits to
perform an act does not commit an offense unless a law . . . provides that the
omission is an offense or otherwise provides that he has a duty to perform the
act.”).  The conduct that the Penal Code
criminalizes in this case is the omission to act that placed the children in
imminent danger of death, bodily injury, or physical or mental impairment.  See id.
§ 22.041(c).  Here, Stehling and Matthew
both testified that Steinecke stared at the burning vehicle containing his two
children for three or four minutes while Stehling asked three times if anyone
was in the vehicle, in disregard of a foreseeable result—that his children
could be seriously injured or killed. 
Legally and factually sufficient evidence thus supports the conclusion
that, by failing to disclose the presence of his children, Steinecke left them
in imminent danger, and failed in his duty to protect them pursuant to the
Family Code.

Conduct and Mental State

The record also contains legally and factually
sufficient evidence to support the jury’s finding that Steinecke acted with
criminal negligence and engaged in conduct by omission that placed his children in imminent
danger of death, bodily injury, or physical or mental impairment.  Stehling and Matthew both testified
that Steinecke stared at the burning vehicle containing his two children for
three or four minutes while Stehling asked three times if anyone was in the
vehicle.  Stehling testified that
Steinecke seemed like he was intoxicated during the incident, and Ramona
testified that she flagged down Stehling because of Steinecke’s strange
behavior.  Matthew testified that the
fire was underneath the engine and passenger compartment, and that smoke was
inside the passenger compartment. 
Stehling testified that the fire was underneath the passenger
compartment.  When Stehling reached the
vehicle and started to open the door to rescue the children, the front tire
exploded and the hood popped open because of the fire.  Stehling testified that the smoke was thick
inside the vehicle and the two children were in the backseat clutching their
teddy bears.  Stehling then pulled both
children out of the vehicle and brought them up the hill with the help of
Steinecke.  Nancy Steinecke, Steinecke’s
ex-wife, testified that the children smelled like smoke when she picked them up
at the police station later that night. 
Officers Zermeno, Pavlicek, Owens, and Korenek all testified that
Steinecke looked intoxicated and smelled like alcohol when they spoke with him
at the scene and at the police station. 
Steinecke admitted that he drank some tequila when he realized that his
vehicle was stuck in the mud. 

In contrast, Steinecke testified that Stehling
never asked him if anyone was in his vehicle. 
When Stehling arrived at the scene, he walked right past Steinecke and
began talking to Matthew and Ramona. 
Similarly, Ramona testified that she did not hear Stehling ask Steinecke
if anyone was in the vehicle.  Ramona
testified that as soon as she saw the fire, she alerted the others that there
were children in the vehicle and Stehling took immediate action.  Ramona did not recall if Steinecke assisted
in the rescue.  Steinecke testified that
he and Stehling took action to rescue the children as soon as Ramona said
something about the fire.  Steinecke also
specifically testified that he opened the door and pulled his children out of
the vehicle, not Stehling.  Steinecke
testified that smoke was not inside the passenger compartment.  The only smoke was on the outside of the
vehicle and most of that was steam from the wet grass.  Steinecke also testified that when he pulled
the children out of the vehicle, the fire was only underneath the engine.  

We conclude that the record contains legally and
factually sufficient evidence to support the jury’s finding that Steinecke ought to have been
aware that there was a substantial and unjustifiable risk in failing to immediately
report the presence of his children or to remove them from the burning vehicle,
and that his failure to perceive that risk constituted a gross deviation from
the standard of care an ordinary person would have exercised under like
circumstances.  See Tex. Pen. Code Ann. § 6.03(d); see also Urbanski
v. State, 993 S.W.2d 789, 795 (Tex. App.—Dallas 1999, no pet.)
(holding that evidence was sufficient to support finding that defendant acted
with criminal negligence in determining whether minor was voluntarily absent
from home without her parents’ consent for substantial length of time); Edmonson
v. State, 955 S.W.2d 472, 473 (Tex. App.—Austin 1997, no pet.) (holding
that evidence was sufficient to support finding that defendant acted with
criminal negligence in selling alcohol to minor).  

We further conclude that the record contains
legally and factually sufficient evidence to support the jury’s finding that Steinecke
engaged in
conduct by omission that placed his children in imminent danger of death,
bodily injury, or physical or mental impairment.  See Rodriguez, 137 S.W.3d at 761 (holding that evidence was sufficient
to support finding that defendant placed child in imminent danger by driving
drunk and crashing with child in vehicle); Walker
v. State, 95 S.W.3d 516, 520–21 (Tex. App.—Fort Worth 2002, pet.
ref’d) (holding that evidence was sufficient to support conviction for
endangering child when defendant fled from police officer with child in vehicle);
Millslagle, 81 S.W.3d at 898 (holding that evidence was
insufficient to support finding that defendant placed three-year-old son in
imminent danger by leaving him alone in truck with windows slightly open near
busy intersection); Contreras v. State, 54 S.W.3d 898, 904–05 (Tex.
App.—Corpus Christi 2001, no pet.) (holding that evidence was sufficient to
support conviction for endangering child when defendant failed to adequately
feed her child); Elder, 993 S.W.2d at 230
(holding that evidence
was insufficient to support finding that defendant placed eight-year-old
daughter in imminent danger by permitting man on probation for indecency with
child to move into home she shared with her children).  While the evidence is conflicting
with regard to Steinecke’s conduct, the amount of time that elapsed between the
time the witnesses first saw fire under Steinecke’s vehicle and the time a
rescue attempt was made, and whether the children were in
imminent danger of death, bodily injury, or physical or mental impairment, the jury
was entitled to disregard any testimony that it found not to be credible.  See
Cain, 958 S.W.2d at 408–09.  

Viewing the evidence in the light most favorable
to the verdict, we hold that a rational trier of fact could have found beyond a
reasonable doubt that Steinecke acted with criminal negligence and engaged in conduct by omission that
placed his children in imminent danger of death, bodily injury, or physical or
mental impairment.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Drichas, 175 S.W.3d at 798; Matson, 819 S.W.2d at 843.  When viewed in a neutral light, the evidence
supporting the jury’s findings is not so weak that the verdict is clearly wrong
and manifestly unjust, nor is the verdict against the great weight and
preponderance of the evidence.  See Johnson, 23 S.W.3d at 11; Ladd, 3 S.W.3d at 557.  The evidence is therefore legally and
factually sufficient to support the jury’s finding that Steinecke acted with
criminal negligence and engaged in conduct by omission that placed
his children in imminent danger of death, bodily injury, or physical or mental
impairment.

Conclusion

          We
hold that the evidence is legally and factually sufficient to support the
jury’s finding that Steinecke acted with criminal negligence and engaged in
conduct by omission that placed R.S. and D.S. in imminent danger of death,
bodily injury, or physical or mental impairment.  We therefore affirm the judgment of the trial
court.  

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Jennings and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).