Gail **MAYBERRY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–10–00274–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 10, 2011.

Chris Iles, Attorney at Law, Refugio, TX, for Appellant.

Rene M. Pena, Criminal District Attorney, Mark Ledet, Assistant District Attorney, Floresville, TX, for Appellee.

Sitting: KAREN ANGELINI, Justice, STEVEN C. HILBIG, Justice, MARIALYN BARNARD, Justice.

## OPINION

Opinion by: MARIALYN BARNARD, Justice.

A jury convicted appellant Gail Mayberry of several counts of child endangerment. In her sole point of error, Mayberry contends the evidence is insufficient to support her conviction. We affirm the trial court's judgment.

## BACKGROUND

On December 21, 2008, Mayberry came home from work and found numerous children in her home. The children were out of school on Christmas break. The children included her fifteen-year-old son, her two other children, and several of their friends. According to certain testimony, when Mayberry arrived, her fifteen-year-old son asked if he could have the car keys so he and some of the other children could "go driving around" in the family station wagon. Mayberry contends her son was driving only to take the children home. Despite the fact that her son was fifteen and unlicensed, Mayberry handed him the keys. Mayberry did not accompany the children.

Mayberry's son drove the group around for a while, ultimately heading to a place known as the "third bridge," a bridge over water where children would fish and swim. When they got to the bridge it was dark and Mayberry's son turned the car lights off in an attempt to scare the other children. There is apparently a legend about a ghost woman or some other entity haunting the bridge. At least one of the girls was scared and wanted to go home. The group then returned to Mayberry's house. When the group arrived back at the house, Mayberry's son honked the horn and the only two children that stayed behind during the first "ride around," decided to go along on the second trip-all of those along on the first trip stayed in the car. There was evidence that before they left, Mayberry stepped outside and saw the children in the car. With the two additional passengers, there was insufficient space in the car seats for all of the children, requiring that at least some of them remain without a seatbelt. Including the fifteen-year-old driver, there were nine children in the car. One of the children testified that Mayberry told them some of them could sit in the

storage compartment in the back. The group drove off with Mayberry's son still at the wheel.

On this second trip, the group decided to go back to the third bridge. Again, the lights were turned off in an attempt to scare the younger children. As before, one of the children wanted to go home so they left and went back to Mayberry's house. Two of the children got out of the car, but Mayberry's son left a third time with six of the children still in the car. Their destination was once again the third bridge. This time, however, the evidence showed Mayberry's son drove very fast toward the bridge, causing the car to become airborne. When the car landed, the driver lost control, crashed through a fence, and landed in an empty pond. As a result of the crash, some of the children were seriously injured and two of them died. It was ultimately determined that Mayberry's son had been traveling over 100 miles per hour; he was the only child in the car wearing a seatbelt.

Mayberry was indicted on seven counts of child endangerment. After a jury trial, she was found guilty and the trial court sentenced her to two years in a state jail facility, but suspended the sentenced and placed Mayberry on two years community supervision. She was also ordered to pay a $1,500.00 fine and court costs. Mayberry then perfected this appeal.

## ANALYSIS

### *Standard of Review*

■ We begin by noting that although Mayberry raises both legal and factual sufficiency challenges to the evidence, the Texas Court of Criminal Appeals has abolished factual sufficiency review. *See Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim.App.2011) (citing *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex.Crim.App.2010) (plurality opinion)). Now, the legal suffi-ciency standard established in *Jackson v. Virginia* is the only standard a reviewing court uses in determining whether the evidence is sufficient to support each element of the charged offense. *Brooks*, 323 S.W.3d at 895 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Accordingly, we will review Mayberry's issue as a challenge to the legal sufficiency of the evidence.

■ In reviewing a claim that the evidence is legally insufficient, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. This standard accounts for the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Accordingly, in analyzing legal sufficiency, we will determine whether the necessary inferences are reasonable based on the combined force of the evidence, direct and circumstantial, when viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007).

### *Application*

Mayberry argues the State failed to produce sufficient evidence that she knew the danger to the children was "imminent" or that she acted "intentionally, knowingly, recklessly, or with criminal negligence." A person commits the offense of endangering a child if she "intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical, or mental impairment." TEX. PENAL CODE ANN. § 22.041(c) (West 2011).

The Texas Court of Criminal Appeals has held "imminent" means "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Devine v. State*, 786 S.W.2d 268, 270 (Tex.Crim.App.1989); *see also Rodriguez v. State*, 137 S.W.3d 758 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (holding danger was "imminent" in child endangerment case where defendant drove under the influence with children as passengers).

In support of her argument, Mayberry points out her son "did much driving under her tutelage." She also allowed him to drive across the street to the grocery store, to basketball practice, to take friends home, "and many other places." Mayberry also apparently allowed him, on previous occasions, to drive with other children in the car. She allowed him to drive the car to San Marcos with her supervision. Mayberry even allowed her son to drive at night. Mayberry contends that in all the times she allowed him to drive, with or without her, he never received a ticket, never damaged the car, and she never received any complaints about his driving. Accordingly, Mayberry asserts that her offense, at most, was allowing her son to drive without a license. Mayberry seems to contend that without evidence she knew her son would drive recklessly or negligently, she was not subject to a conviction for child endangerment. We disagree.

■ The evidence, when viewed in the light most favorable to the verdict, established that Mayberry allowed a fifteen-year-old, unlicensed driver to drive a station wagon, at night, without adult supervision. She allowed that fifteen-year-old, unlicensed driver to drive around, at night, unsupervised with first six, and then eight, children. Moreover, she allowed this knowing that not all of these children would be able to sit safely in the vehicle, requiring that at least some of them travel without seatbelts. There was evidence that on the second trip, she saw all of the children in the vehicle, saw they could not all sit safely on the vehicle seats given their numbers, and advised that some of them could sit in the open cargo compartment in the back. Mayberry allowed her son to leave her house and drive with these children as passengers not once, not twice, but three times. Clearly, Mayberry had no idea where her son was or where he was taking the children, as the officer testified she stated her son "should have been driving around town but he shouldn't have been out there." According to her own testimony, she did not know where all of her children were-in the house or with her fifteen-year-old son.

It is irrelevant that her son had no previous accidents. His previous driving experience is likewise irrelevant. At the moment Mayberry allowed an underage, unlicensed driver to operate the vehicle at night with more passengers than there were available seats, the danger to the children was imminent. *See Rodriguez*, 137 S.W.3d at 761 (holding rational fact finder could have found appellant placed children in imminent danger where officer testified he could not rule out alcohol consumption as contributing factor to car accident, even though other driver failed to yield right of way; alcohol impairment could have caused appellant to react more slowly). Moreover, the evidence shows Mayberry's actions in giving her son the car keys and allowing him to drive with improperly seated children was intentional, or at least reckless. Mayberry herself saw there was insufficient room in the car for all of the children, and specifically told them to sit in the open cargo space.

Considering this evidence within the *Jackson v. Virginia* standard, we hold the jury could have found Mayberry intentionally, knowingly, recklessly, or with crimi-

nal intent placed the children in imminent danger of death, bodily injury, or physical impairment. *See* 443 U.S. at 319, 99 S.Ct. 2781; TEX. PENAL CODE ANN. § 22.041(c). There was conflicting evidence, but it was within the province of the jury to resolve the conflicts, weigh the evidence, and draw reasonable inferences. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. We hold the jury's inferences were reasonable based on the combined force of the evidence, direct and circumstantial, when viewed in the light most favorable to the verdict. *See Clayton,* 235 S.W.3d at 778.

█ The dissent points out that "[t]he determination of whether a child is in imminent danger is always a fact-intensive exercise." Dissenting opinion at 513. We wholly agree with this assertion. However, the dissent then ignores the applicable standard, which places fact finding within the province of the jury, allowing it to draw reasonable inferences from the basic facts and make an ultimate determination with regard to whether the danger to the children was imminent. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. Our duty is not to act as a thirteenth juror, but merely to determine whether the jury's inferences are reasonable based on the combined force of the evidence–both direct and circumstantial–when viewed in the light most favorable to the jury's verdict. *Id.* Given the combined force of the evidence in this case, any rational fact finder could have found Mayberry placed the children in imminent danger of bodily injury beyond a reasonable doubt. *See Rodriguez,* 137 S.W.3d at 761 (holding rational fact finder could have found appellant placed children in imminent danger where officer testified he could not rule out alcohol consumption

as contributing factor to car accident, even though other driver failed to yield right of way; alcohol impairment could have caused appellant to react more slowly). Certainly, the evidence establishing the driver's lack of experience given his age, his unlicensed status, and Mayberry's decision to allow unbelted children to travel with such a driver was evidence from which the jury could have inferred imminent danger–especially when combined with the testimony that Mayberry's son was driving one hundred miles an hour at the time of the accident, suggesting he was not the safe driver Mayberry claimed he was and that she was aware of this. Given the standard of review, we cannot say such an inference by the jury was unreasonable.

### CONCLUSION

Based on the foregoing, we overrule Mayberry's issue and affirm the trial court's judgment.

Dissenting opinion by: STEVEN C. HILBIG, Justice.

STEVEN C. HILBIG, Justice, dissenting. .

The majority concludes the evidence is legally sufficient to support Gail Mayberry's six convictions for endangering a child. I disagree.

### Background

Mayberry was charged with seven counts of endangering a child under section 22.041(c) of the Texas Penal Code.[1] The charges arose from an automobile accident that caused the death of two children and harmed several other children.

---

1. "A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment." TEX. PENAL CODE ANN. § 22.041(c) (West 2011).

The indictment alleged Mayberry "intentionally, knowingly, recklessly, or with criminal negligence" engaged in conduct that placed a child younger than fifteen years of age in "imminent danger of death, bodily injury, or physical or mental impairment." The State pled that the criminal conduct was either "allowing or requesting" her son Deon Mayberry, who was fifteen years old and did not hold a valid Texas driver's license, to operate a motor vehicle with the child as a passenger, or by "failing to prevent" her son from operating the vehicle.[2]

## ARTICLE 21.15 TEXAS CODE OF CRIMINAL PROCEDURE

I disagree with the majority's decision because the evidence does not support a conviction for endangering a child under section 22.041(c) of the Texas Penal Code. Article 21.15 of the Texas Code of Criminal Procedure provides that whenever the accused is charged with acting recklessly or with criminal negligence in the commission of the offense, the charging instrument "must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness or criminal negligence." TEX.CODE CRIM. PROC. ANN. art. 21.15 (West 2009); *Mitchell v. State*, 321 S.W.3d 30, 36–37 (Tex.App.-Houston [1st Dist.] 2010, pet. ref'd). The State is limited to the acts pled in the charging instrument to prove the recklessness or criminal negligence of the conduct. *See Mitchell*, 321 S.W.3d at 36–37; *Goodrich v. State*, 156 S.W.3d 141, 145–47 (Tex.App.-Dallas 2005, pet. ref'd); *Millslagle v. State*, 81 S.W.3d 895, 897–98 (Tex.App.-Austin 2002, pet. ref'd); *see also Sanchez v. State*, —— S.W.3d ——, —— (Tex. Crim.App.2010) (limiting discussion of sufficiency of evidence to manner and means

theories alleged in indictment); *Jefferson v. State*, 189 S.W.3d 305, 310–14 (Tex. Crim.App.), cert. denied 549 U.S. 957, 127 S.Ct. 386, 166 L.Ed.2d 276 (2006) (in discussing unanimous verdict requirement, court limited discussion to manner and means alleged in indictment). Because the State chose to limit its allegations of child endangerment to Mayberry's "allowing or requesting Deon Mayberry, a 15 year old, without a valid Texas driver's license, to operate a motor vehicle in which [the child] was a passenger," or "by failing to prevent Deon Mayberry, a 15 year old, without a valid Texas driver's license, to operate a motor vehicle in which [the child] was a passenger," our analysis should only address those facts.

The majority relies on the following evidence to sustain the jury's verdict: Mayberry's son was fifteen and was unlicensed, he drove without adult supervision, at night, with six or eight children without sufficient seatbelts for each child, Mayberry advised some of the children to sit in an area of the car that did not have any seatbelts, she allowed her son to leave the residence with child passengers three times, Mayberry had "no idea" where her son was driving, and Mayberry did not know the whereabouts of all her children that night. Majority opinion at 510. But the State chose to limit its allegations to only the first two facts to prove she committed the offense. Therefore, our analysis should properly rely only on those two facts to determine whether the children were in imminent danger when she requested, allowed, or failed to prevent her unlicensed son from operating the vehicle in which the children were passengers.

The parties appear to agree this case turns on whether the danger of death, bodily injury, or impairment was immi-

---

2. At trial, the State abandoned Count VII, which charged Mayberry with endangering her son Deon, and the jury returned guilty verdicts on the remaining counts.

nent. In a previous child endangerment case, this court defined "imminent" as meaning " 'ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near.' " *Elder v. State*, 993 S.W.2d 229, 230 (Tex.App.-San Antonio 1999, no pet.) (*quoting Devine v. State*, 786 S.W.2d 268, 270 (Tex.Crim. App.1989)). Conduct that merely places a child in a potentially dangerous situation is not sufficient for conviction. *See Millslagle*, 81 S.W.3d at 898.

The determination of whether a child is in imminent danger is always a fact-intensive exercise. However, my review of cases discussing the "immediacy" element reveals a consistent pattern. Where the danger is at hand, courts have affirmed the convictions. *See Rodriguez v. State*, 137 S.W.3d 758, 762–63 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (intoxicated driver failed to slow down when second vehicle turned in front of him and vehicles collided); *Walker v. State*, 95 S.W.3d 516, 520–21 (Tex.App.-Fort Worth 2002, pet. ref'd) (while evading officer, defendant drove at speeds up to eighty-five miles per hour, ran stop sign, drove across highway grass median, and eventually wrecked vehicle with child occupant); *see also Butler v. State*, No. 14–09–000067–CR, 2010 WL 547055, at *4 (Tex.App.-Houston [14th Dist.] Feb. 18, 2010, no pet.) (mem. op., not designated for publication) (defendant drove while intoxicated with two unrestrained children in vehicle, defendant admitted to smoking marijuana and left cocaine and marijuana in vehicle with children while talking with police); *Wahlig v. State*, No. 03–07–00695–CR, 2009 WL 884779, at *4–5 (Tex.App.-Austin Mar. 27, 2009, pet. ref'd) (mem. op., not designated for publication) (defendant set fire to house with children inside); *Teeter v. State*, No. 05–06–00309–CR, 2007 WL 510356, at *6–12 (Tex.App.-Dallas Feb. 20, 2007, no pet.) (not designated for publica-

tion) (intoxicated school bus driver drove at a high rate of speed, went off road, crossed center line, swerved from side-to-side, and nearly "flipped" bus while turning without slowing); *Steinecke v. State*, No. 01–05–00813–CR, 2007 WL 1119890, at *4–6 (Tex.App.-Houston [1st Dist.] Apr. 12, 2007, no pet.) (mem. op., not designated for publication) (defendant took no action when vehicle on fire, with children in back seat); *Vreeland v. State*, No. 13–04–368–CR, 2006 WL 3028065, at *4–5 (Tex. App.-Corpus Christi Oct. 26, 2006) (mem. op., not designated for publication) (defendant left child in closed car for eight hours when outside temperatures exceeded ninety degrees); *Dewey v. State*, No. 05–06–00445–CR, 2006 WL 2337800, at *3 (Tex.App.-Dallas Aug. 14, 2006, no pet.) (mem. op., not designated for publication) (intoxicated driver driving erratically came within four feet of a group of children); *Tems v. State*, No. 06–04–00164–CR, 2005 WL 2076639, at *5–8 (Tex.App.-Texarkana Aug. 30, 2005, pet ref'd) (mem. op., not designated for publication), cert. denied, 547 U.S. 1211, 126 S.Ct. 2898, 165 L.Ed.2d 926 (2006) (defendant drove at speeds exceeding ninety-five miles per hour while fleeing from police with unrestrained eighteen-month-old daughter in vehicle); *Head v. State*, No. 09–06–028–CR, 2006 WL 3742800, at *2–4 (Tex.App.-Beaumont Dec.20, 2006, no pet.) (mem. op., not designated for publication) (defendant drove at excessive speed while intoxicated with three children in vehicle); *Pittman v. State*, No. 14–03–01296–CR, 2005 WL 1149819, at *1 (Tex.App.-Houston [14th Dist.] May 17, 2005, no pet.) (mem. op., not designated for publication) (intoxicated school bus driver appeared to fall asleep while driving, unable to control bus by driving within a single lane, failed to negotiate a turn and drove the bus into a ditch); *Anguiano v. State*, No. 08–02–

00443–CR, 2004 WL 178601, at *1–2 (Tex. App.-El Paso Jan. 29, 2004, pet. ref'd) (mem. op., not designated for publication) (intoxicated driver crashed car against curb, found passed out with door open and child restrained in car seat reaching for a liquid-filled syringe ten inches away); *Suarez v. State*, No. 05–03–00096–CR, 2003 WL 23025024, at *3–5 (Tex. App.-Dallas Dec. 30, 2003, pet ref'd) (mem. op., not designated for publication) (defendant allowed three-year-old child to remain unrestrained in moving vehicle, child fell out of front passenger window); *Harrist v. State*, Nos. 11–01–00093–CR & 11–01–00094–CR, 2002 WL 32344342, at *2–3 (Tex.App.-Eastland Mar. 28, 2002, no pet.) (not designated for publication) (while defendant slept in motel room, her six year-old child with Down's syndrome twice crossed busy street and police discovered open knives, syringes and pill bottles strewn about table and floor of motel room, and defendant had knowledge that child had tendency to run into roadways); *Perez v. State*, No. 05–99–00830–CR, 2000 WL 1716517, at *2 (Tex.App.-Dallas Nov. 17, 2000, no pet.) (not designated for publication) (defendant found unconscious in parking lot next to vehicle with door open, four-month-old baby found inside vehicle, upon awakening defendant appeared intoxicated and incoherent, and did not know his identity).

However, where the danger was a more remote possibility, courts have concluded the danger was not imminent. *See Millslagle*, 81 S.W.3d at 895 (defendant left three-year-old boy unattended in truck while inside store hiding in space above ceiling and using methamphetamine; State alleged culpable conduct as leaving child alone for forty-five minutes in vehicle and using drugs); *Elder*, 993 S.W.2d at 231 (defendant and children lived with person on probation for indecency with child, person molested one of defendant's children);

*see also Williams v. State*, No. 03–08–00684–CR, 2010 WL 2788819, at *5–7 (Tex. App.-Austin July 14, 2010, no pet.) (mem. op., not designated for publication) (no imminent harm to three children who lived with defendant in apartment where drugs were packaged with decorative comic-book character Batman sticker; drugs were found on high shelf in living room closet, and court reasoned too many intervening steps between location of drugs and harm to children); *Salazar v. State*, No. 10–07–00335–CR, 2008 WL 2374941, at *2 (Tex. App.-Waco June 11, 2008, pet. ref'd) (mem. op., not designated for publication) (defendant's two and three-year-old children found on public street headed towards busy road, defendant was talking on phone when children apparently climbed out window and ran into street); *Medearis v. State*, No. 11–04–00201–CR, 2006 WL 1913488, at *2–3 (Tex.App.-Eastland July 13, 2006, no pet.) (mem. op., not designated for publication) (defendant's two and three-year-old children found unsupervised in unfenced front yard located in residential area while defendant slept in residence); *Moody v. State*, No. 01–03–00685–CR, 2004 WL 1472216 (Tex.App.-Houston [1st Dist.] July 1, 2004, no pet.) (mem. op., not designated for publication) (defendant's two and three-year-old children habitually found outside residence on private gravel road near busy road with 45 mph speed limit, often seen clad only in diapers even in colder temperatures, and residence kept in dirty, "nasty," smelly, and unsanitary condition.); *Moreno v. State*, No. 07–01–0441–CR, 2003 WL 21516575, at *2–3 (Tex.App.-Amarillo July 3, 2003, no pet.) (mem. op., not designated for publication) (defendant arrested for DWI, left ten-month-old baby, ten-year old child and eight-year-old child home alone in custody of twelve-year-old child); *Bordelon v. State*, No. 09–96–305–CR, 1998 WL

770449, at *2 (Tex.App.-Beaumont Nov. 4, 1998, no pet.) (not designated for publication) (defendant and co-worker moved heavy object through part of day care center, defendant left coworker to answer phone and told co-worker to wait for her return, co-worker attempted to move object which fell on child killing her).

I believe the evidence demonstrates Mayberry did no more than to place the children in a potentially dangerous situation by engaging in the acts alleged by the State. As her son drove away, the danger to the children was not "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Elder*, 993 S.W.2d at 230. Certainly, Mayberry placed the children in a potentially dangerous situation that tragically came to fruition. However, her actions were closer to the actions of the defendants in the latter cases cited above where the courts found danger was not imminent.

I do not reach this conclusion acting as a thirteenth juror as suggested by the majority or by abandoning the applicable standard of review.[3] Rather, I disagree with the majority's continued reliance upon acts not pled by the State in the indictment as a rationale for concluding the evidence is sufficient to support the jury's verdict. The sufficiency of the evidence is measured against a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex.Crim.App.1997). "[T]he hypothetically correct charge would include an indictment allegation which is necessary to give the defendant adequate notice of the charge against him so as to meaningfully defend himself." *Gollihar v. State*, 46 S.W.3d 243, 256 (Tex.Crim.App.

2001). As discussed above, the State must provide notice to a defendant of the acts upon which the State intends to rely to demonstrate recklessness or negligence by including those allegations in the indictment. *See also Smith v. State*, 309 S.W.3d 10, 14–16 (Tex.Crim.App.2010) (discussing requirements of article 21.15). Thus, the legal sufficiency of the evidence must be measured against only those allegations.

Viewing the proper evidence in the light most favorable to the jury's verdict, there is insufficient evidence upon which a rational jury could have found the danger was imminent. Accordingly, I would reverse the judgments of the trial court and render a judgment of acquittal.

**3.** Simply because a jury has found the defendant guilty does not relieve an appellate court of its obligation, when the sufficiency of the evidence is raised as a point of error, to determine whether the evidence supports the jury's verdict, even as to the issue of immediate harm. *Elder, Millslagle, Williams, Medearis, Moody, Moreno,* and *Bordelon* are all cases where the appellate court reversed the conviction after a jury trial, concluding the evidence was insufficient to support the jury's finding of imminent danger.