

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00385-CR

Daniel **LOPEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR7475B
Honorable Mary D. Roman, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Marialyn Barnard, Justice
            Rebeca C. Martinez, Justice
            Patricia O. Alvarez, Justice

Delivered and Filed:  May 7, 2014

AFFIRMED AS MODIFIED

A jury convicted appellant Daniel Lopez of aggravated robbery with a deadly weapon. The trial court sentenced Lopez to sixty years confinement in the Texas Department of Criminal Justice–Institutional Division. On appeal, Lopez raises two issues, contending: (1) the evidence is legally insufficient to support his conviction; and (2) the evidence is legally insufficient to support the trial court's order assessing attorney's fees. We affirm the trial court's judgment as modified.

## BACKGROUND

According to the evidence, a San Antonio Cricket cell phone store was robbed by two individuals. After the robbery, an employee, Dezarie Jimenez, called David Mark Hamm, the store manager, to report the robbery. When Mr. Hamm arrived, he retrieved the video footage from the store's security camera and isolated the footage related to the robbery. He also spoke to the manager of a Money Box store located in the same strip mall as the Cricket store and asked for the store's video footage. The videotapes were provided to investigators from the San Antonio Police Department. Investigators were also able to obtain video footage or pictures from two nearby liquor stores and a Magic Food Mart.

As for the items stolen, Mr. Hamm was able to provide investigators with a list of the phones stolen and advised that approximately $1,100.00 was taken from the cash register.

Ms. Jimenez testified that on the day of the robbery, two males, one Anglo and one Hispanic, entered the Cricket store. According to Ms. Jimenez, the Anglo male pulled out a handgun and pointed it at her head. The Anglo male appeared to have tattoos on his face that seemed to be covered with makeup. The Anglo male instructed Ms. Jimenez to give him all the money in the cash register. The Anglo male also told Ms. Jimenez that if she touched the panic button he would "blow her brains out." Ms. Jimenez testified that while this was happening, the Hispanic male was in the storage room where the extra phones are kept.

According to law enforcement, Ms. Jimenez described the Anglo male as 5'7", weighing about 160 pounds, and she described the Hispanic male as 5'7", weighing about 170 pounds. Both males were described as being twenty to thirty years of age. She stated the Hispanic male was wearing blue jeans, a striped shirt, and a blue or black baseball cap. She also described his build as "medium."

Ms. Jimenez testified the Anglo male pulled a bag from his pocket and instructed her to put all the money from the cash register into the bag. The Anglo male then took her to the storage room and instructed her to fill the bag with phones. During this time, the Hispanic male was filling another bag with phones from the storage room. When Ms. Jimenez finished filling the bag, the Anglo male asked if the store had a safe. She told him it did not, and the Anglo male then asked if the store had a restroom, which it did. The Anglo male forced Ms. Jimenez into the restroom and instructed her to stay in the restroom. He told her that if she came out before they left, he would "blow [her] brains out." Eventually, Ms. Jimenez felt it was safe to come out; she called 9-1-1 and the store manager.

Two days after the robbery, Ms. Jimenez was shown a photo lineup but was unable to identify anyone. However, a little more than a month after the robbery, Ms. Jiminez was watching the news and saw a report about another robbery. The news program displayed photos of the robbers and Ms. Jimenez recognized one of the robbers as the Anglo male who pointed the gun at her head during the robbery at the Cricket store. Ms. Jimenez reported this information to the police. The Anglo male was later identified as Jason Bessonette.

Valerie Tschirhart Williams, Jason Bessonette's ex-girlfriend, testified she had been dating Bessonette for a month at the time of the Cricket store robbery. Ms. Williams also testified she knew Daniel Lopez and had known him for eight or nine years. Ms. Williams met Lopez through Lopez's brother, Gregory Lopez, whom she had known for almost ten years. Ms. Williams testified Gregory Lopez was a heavyset man and much bigger than his brother Daniel. Ms. Williams described Daniel Lopez as slender. Ms. Williams admitted she often lent Bessonette her car when they were dating so Bessonette could drive to work.

During the trial, Ms. Williams was shown the video footage taken from the Cricket store and was asked to identify the individuals in the video. Ms. Williams identified the individuals as

Daniel Lopez and her ex-boyfriend, Jason Bessonette. Ms. Williams specifically testified it was impossible that the individual in the video was Gregory Lopez. Ms. Williams was also shown videos taken from some of the other businesses in the strip mall around the time of the robbery and she again identified Daniel Lopez as the individual in the videos. Ms. Williams also identified the clothing Lopez was wearing in the video and indicated he had on a striped shirt, jeans, and a dark baseball hat—a description matching the one provided by Ms. Jimenez. Additionally, some of the video footage showed a car driving into the strip mall and parking around the time of the robbery. The vehicle was later identified as belonging to Valerie Tschirhart Williams.

Sergeant Rodolfo Contero provided testimony related to the video footage provided by the Cricket store and other businesses in the strip mall. Video footage taken from one of the cameras showed the two males in the strip mall near the time of the robbery. The men entered a liquor store in the strip mall and purchased a soda. A video camera clearly showed Lopez exiting one of the other stores in the strip mall just before the robbery.

Although Sergeant Contero was unable to obtain video footage from one of the stores in the strip mall, he was able to view the footage from the security monitor and take photographs of the footage with his camera phone. Several of the photos obtained by Sergeant Contero showed Daniel Lopez at stores in the strip mall around the time of the robbery. Moreover, Sergeant Contero testified Daniel Lopez admitted in a phone conversation, on multiple occasions, that he was the person seen on the video footage leaving one of the stores in the strip mall.

Gregory Lopez, Daniel Lopez's older brother, testified he robbed the Cricket store, not his brother. Gregory Lopez stated he had taken his younger brother, Daniel Lopez, to look for jobs. At the time, he was high on cocaine and got bored sitting and waiting in the car so he got out and robbed the Cricket store. He claimed, however, he had an associate, who arrived in a different vehicle, who help him commit the robbery.

Joe Carmona, an officer with the San Antonio Police Department, testified he made a traffic stop unrelated to the robbery. The individual stopped was Gregory Lopez. Officer Carmona searched the vehicle during the traffic stop and discovered new cellular phones in the center console of the vehicle — it was later determined the phones were from the Cricket store robbery. Officer Carmona turned the cell phones and Gregory Lopez over to the robbery detectives.

On cross-examination, Gregory Lopez admitted that when he was taken to the station after the traffic stop that he did not tell law enforcement about his involvement in the Cricket store robbery. He stated he lied to the detectives because he was "trying to beat the case." Gregory Lopez did not mention the Cricket store robbery until he was charged with robbing a Jack-in-the-Box. He testified that he believed he could get concurrent sentences for both robberies.

As for the robbery at issue here, Gregory Lopez testified he entered the Cricket store with a pellet gun and that his associate, who he refused to identify, used an assault rifle in the robbery. Gregory Lopez stated he entered the store and pointed the gun at the female behind the counter, but he could not remember if the female was Hispanic, White, or African-American. When asked about what happened after he pointed the gun at the female clerk, Gregory Lopez stated he could not remember and that he could not even remember getting home. He also could not remember how much money was taken nor how many phones were taken. When asked what he was wearing the day of the robbery, Gregory Lopez stated he was wearing a long sleeve gray and white striped shirt, a black hat, and jeans. He stated the Cricket store was the only store he entered on the day of the robbery.

Javier Sosa, a detective with the Robbery Unit of the San Antonio Police Department, spoke with Gregory Lopez more than two weeks after the robbery on a matter unrelated to the robbery. Although Detective Sosa did not speak with Daniel Lopez and was not involved with the investigation of the Cricket store case, he testified that based on his observation of Daniel Lopez

in the courtroom, Daniel and Gregory Lopez are not comparable in size. Gregory Lopez is heavyset, weighing around 250 to 275 pounds. Gregory also has a tattoo of a gun on his face whereas Daniel does not have any tattoos on his face. However, the defense pointed out that Gregory could have gotten the tattoos after the Cricket store robbery.

After considering the evidence and argument of counsel, the jury found Daniel Lopez guilty. Lopez then perfected this appeal.

ANALYSIS

Lopez raises two issues on appeal, contending: (1) the evidence is legally insufficient to prove that he, as opposed to his brother Gregory, committed the robbery, and (2) the evidence is legally insufficient to support the trial court's assessment of attorney's fees.

***Standard of Review***

The Supreme Court announced the standard for reviewing legal sufficiency challenges in *Jackson v. Virginia*. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Mayberry v. State*, 351 S.W.3d 507, 509 (Tex. App.—San Antonio 2012, pet. ref'd). Thus, we review Lopez's sufficiency complaint under the standards set forth in *Jackson v. Virginia*.

Under the legal sufficiency standard, the evidence is evaluated by the reviewing court in the light most favorable to the verdict in an attempt to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. 2005). Under this standard, deference is given to the jury's weighing of the evidence, assessment of credibility, and resolution of conflicts in the testimony. *Brooks*, 323 S.W.3d at 899. The jury's verdict will be affirmed unless the reviewing court determines that a reasonable juror would have had a reasonable doubt about one of the elements of the offense. *Laster v. State*, 275 S.W. 3d 512, 517 (Tex. Crim. App. 2009).

The legal sufficiency standard requires an appellate court to resolve any inconsistencies in the testimony in favor of the verdict. *Gonzales v. State*, 330 S.W.3d 691, 694 (Tex. App.—San Antonio 2010, no pet.) (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)). Thus, in analyzing the legal sufficiency of the evidence, this court must determine whether the necessary inferences are reasonable based on the combined force of the evidence, direct and circumstantial, when viewed in the light most favorable to the verdict. *Mayberry*, 351 S.W.3d at 509 (citing *Clayton v. State*, 235 S.W.3d 772, 779 (Tex. Crim. App. 2007)); *see also Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (holding standard of review is same for both direct and circumstantial cases).

It is important to remain mindful that an appellate court cannot reweigh the evidence or substitute its judgment for that of the jury. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Any, all, or part of a witness's testimony may be accepted or rejected by the jury. *Id.* The jury maintains the power to draw reasonable inferences from basic facts to ultimate facts; and it is their sole province to reconcile any evidentiary conflicts. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995); *Welch v. State*, 993 S.W.2d 690, 693 (Tex. App.—San Antonio 1999, no pet.).

### *Sufficiency of the Evidence to Support Conviction*

As noted above, Lopez argues the evidence is insufficient to support the conviction. More specifically, Lopez argues the State failed to establish beyond a reasonable doubt that he, rather than his brother Gregory Lopez, robbed the store. He points out that his brother admitted robbing the Cricket store. Thus, Lopez concludes, the evidence is legally insufficient to support his conviction. We disagree.

It is undisputed that two people robbed the Cricket store. Ms. Williams identified the individuals in the video footage taken from the Cricket store and other stores in the strip mall as her ex-boyfriend and the appellant, Daniel Lopez. Although her testimony was contradicted by Gregory Lopez's confession, the conflict on this issue was for the jury to resolve, and it clearly resolved the issue in favor of Lopez's guilt. *See Heiselbetz*, 906 S.W.2d at 504; *Welch*, 993 S.W.2d at 693. Thus, given that there were only two people that robbed the Cricket store, if the jury believed Ms. Williams, as they were entitled to, it could have found Lopez guilty as he was clearly identified as the individual in the video footage that was taken during the robbery. The jury could have concluded Gregory Lopez confessed to save his brother; knowing he was already going to prison for the Jack-in-the Box robbery, he had nothing to lose by confessing.

There was, however, additional evidence the jury could have relied upon in making its determination of guilt. The Hispanic individual in the video footage was a male of medium build, weighing approximately 170 pounds. This was also the description given by the store clerk, Ms. Jimenez, who had an opportunity to view both robbers at length. Gregory Lopez, as the jury could see and the testimony provided, has a large build, weighing approximately 260-270 pounds. The Hispanic individual in the video did not have any tattoos on his face whereas Gregory Lopez has a tattoo of a gun on his check. Additionally, Gregory Lopez claimed he used an assault rifle during the robbery, but the video footage taken from the Cricket store does not show either individual holding or using an assault rifle.

Given this evidence, plus that set forth in detail above, we cannot say the evidence is legally insufficient. There was sufficient evidence from which the jury could have reasonably inferred that despite his protestation and his brother's convenient confession, Daniel Lopez robbed the Cricket store. Although there were some inconsistencies in the evidence, we must resolve them in favor of the jury's verdict. S*ee Gonzales*, 330 S.W.3d at 694. Accordingly, viewing the evidence

in the light most favorable to the verdict and leaving credibility determinations to the jury, we hold the evidence is legally sufficient to support the conviction.

### *Sufficiency of the Evidence to Support Imposition of Attorney's Fees*

Lopez next contends the evidence is legally insufficient to support the imposition of attorney's fees. The State counters that Lopez's argument is "moot" because "[a]ttorney's fees were not assessed in this case." In support of this contention, the State points to an amended bill of costs. However, we must disagree with the State because the judgment clearly states, under the heading "Court Costs" that the trial court assessed court costs in the amount of $334.00 "PLUS ATTY FEES." Thus, although the amount of attorney's fees may not yet have been determined, they were clearly assessed or imposed in the judgment. It appears that rather than mootness, the State is contending that the issue is not *ripe* because no fees have been assessed prior to any determination of continued indigency.

Lopez does not challenge the amount of fees assessed, which might not be ripe for our review, but instead complains the assessment of *any* attorney's fees is improper because there is no evidence in the record to overcome the presumption he has remained indigent. That is, there is no evidence of a material change in his financial circumstances. *See Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013); TEX. CODE CRIM. PROC. art. 26.04(p) (West 2013). Accordingly, we hold the evidentiary challenge is ripe. *See* TEX. CODE CRIM. PROC. art. 26.04(p).

A trial court is permitted to impose attorney's fees against a defendant who had court-appointed counsel if it determines the defendant has financial resources enabling him to offset, in part or in whole, the costs of legal services provided. *See* TEX. CODE CRIM. PROC. art. 26.05(g). Under Article 26.05(g), "the defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Cates*, 402 S.W.3d at 251 (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App.

2010)). Article 26.05(g) requires a *present* factual determination of the defendant's financial resources without speculation about possible future resources. *See Cates*, 402 S.W.3d at 252 (emphasis added).

Here, the record reflects the trial court appointed counsel to represent Ramirez at trial. Criminal defendants are not entitled to court-appointed counsel unless they are indigent. *See* TEX. CODE CRIM. PROC. art. 26.04. Once he was found indigent, Lopez is presumed to have remained indigent for the remainder of the proceedings absent a factual determination of a material change in his financial circumstances. *See Cates*, 402 S.W.3d at 251; TEX. CODE CRIM. PROC. art. 26.04(p).

There was never a finding by the trial court that Lopez's financial circumstances changed and that he was able to repay the costs of court-appointed trial counsel. And, in fact, such a finding is belied by the fact that the trial court, after Lopez was convicted, appointed appellate counsel for Lopez. Accordingly, there are insufficient facts in the record to rebut Lopez's presumed indigency and justify the assessment of any attorney's fees against him under Article 26.05(g). *See* TEX. CODE CRIM. PROC. art. 26.05(g). Accordingly, we sustain this issue with regard to the imposition of attorney's fees and reform the trial court's judgment to delete the imposition of attorney's fees. *See Solomon v. State*, 392 S.W.3d 309, 311 (Tex. App.—San Antonio 2012, no pet.).

CONCLUSION

Based on the foregoing, we affirm the judgment as modified, specifically modifying the trial court's judgment to eliminate the imposition of attorney's fees against Lopez.

Marialyn Barnard, Justice

Do Not Publish