

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00041-CR

Shawn Leonard **ELAHEE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Guadalupe County, Texas
Trial Court No. CCL-15-0618
Honorable Frank Follis, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice
               Jason Pulliam, Justice

Delivered and Filed:  December 14, 2016

AFFIRMED

A jury found appellant Shawn Elahee guilty of resisting arrest, and the trial court sentenced him to one-year probation. In his sole point of error, Elahee contends the evidence is legally insufficient to support his conviction. We affirm the trial court's judgment.

### BACKGROUND

After receiving a dispatch for an assault in progress, Officer Ricard Aleman arrived at Elahee's residence and found a woman, later identified as Elahee's wife, and a young child standing outside. The woman was crying and holding her throat, stating she was hurt. Officer

Aleman observed a slight redness around the bottom of her neck. He did not detect any injuries on the child, but noted that the child appeared frightened. After speaking with the woman, Officer Aleman went inside the home and found Elahee sitting on the floor. Officer Aleman immediately noticed a strong odor of alcohol coming from Elahee. When he asked Elahee to stand, Elahee appeared to have trouble standing, suggesting to him that Elahee was intoxicated. Officer Aleman also described Elahee as aggressive, stating he repeatedly clenched his fists and told him to leave. At that point, Officer Aleman decided to place Elahee in handcuffs for his own safety.

Shortly thereafter, while Officer Aleman escorted Elahee outside, Officer Colton Armstrong arrived. Both officers then attempted to place Elahee in the back of Officer Aleman's patrol car, but Elahee used his body as leverage against the patrol car to prevent himself from being placed inside. According to Officer Aleman, Elahee "jerk[ed] back" from the car and against the officers, pushing the officers backwards. Because they were unable to place Elahee into the patrol car, the officers called for a transport van and back up. When the van arrived — along with two other officers — Elahee was sitting on the grass in the front yard, refusing to stand. Instead, Elahee laid down on his back, forcing the four officers to pick him up by his arms and legs and place him in the van. Elahee then used his feet to push against the van to prevent the officers from placing him inside. After several failed attempts to secure Elahee in the van, the officers "dry stunned" Elahee with a taser; however, it was ineffective. Eventually, Elahee gave up and allowed the officers to place him into the van.

When the officers and Elahee arrived at the police station, Elahee was asleep. Because he was sleeping, the officers placed Elahee on a stretcher to take him to a detox cell; however, Elahee woke up and began to struggle. According to Officer Aleman, Elahee "pulled off and — and it was just — he pulled off and was going to stand up and almost like fight us." The officers had to pin down Elahee to restrain him.

Elahee was ultimately charged by information with two misdemeanors: assault causing bodily injury — family violence and resisting arrest. With respect to the resisting arrest charge, the information stated Elahee intentionally prevented Officer Aleman from effecting an arrest by using force against that officer. At the conclusion of a jury trial, the jury found Elahee not guilty of assault, but guilty of resisting arrest. The trial court sentenced Elahee to one-year probation. Elahee then perfected this appeal.

## ANALYSIS

In his sole point of error, Elahee contends the evidence is legally insufficient to support his conviction because the State failed to establish he used force against Officer Aleman's physical person as required by section 38.03(a) of the Texas Penal Code. *See* TEX. PENAL CODE § 38.03(a) (West 2011). According to Elahee, the evidence established that he used force only against "the officer's broader goal of effectuating an arrest" by pushing away from the officer's patrol car to avoid being placed in the car, which under *Dobbs v. State*, is not the type of force covered by the plain language of section 38.03(a). *See* 434 S.W.3d 166, 173 (Tex. Crim. App. 2014).

### *Standard of Review*

When reviewing sufficiency of the evidence in a criminal case, we apply the Supreme Court's legal sufficiency standard as set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Dobbs*, 434 S.W.3d at 170; *Ford v. State*, 444 S.W.3d 171, 177 (Tex. App.—San Antonio 2014), *aff'd,* 477 S.W.3d 321 (Tex. Crim. App. 2015) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). Under this standard, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Dobbs*, 434 S.W.3d at 170; *Mayberry v. State*, 351 S.W.3d 507, 509 (Tex. App.—San Antonio 2011, pet. ref'd) (citing *Jackson*, 443 U.S. at 319). We consider all the evidence in the record, whether direct or circumstantial, noting that

circumstantial evidence alone may be sufficient to establish guilt of an offense. *Dobbs*, 434 S.W.3d at 170. We also remain mindful that we may not reweigh the evidence or substitute our judgment for that of the jury. *Orellana v. State*, 381 S.W.3d 645, 653 (Tex. App.—San Antonio 2012, pet. ref'd). The jury is the sole judge of the credibility and weight to be given to the testimony of the witnesses, and the jury may accept or reject all or any part of a witness's testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). In the event of conflicting evidence, we presume the jury resolved conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170.

### *Applicable Law*

A person commits the offense of resisting arrest "if he intentionally prevents or obstructs a person he knows is a peace officer … from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another." *Id.* § 38.03(a); *see Finley v. State*, 484 S.W.3d 926, 927–28 (Tex. Crim. App. 2016); *Dobbs*, 434 S.W.3d at 170. Recently, in *Dobbs*, the Texas Court of Criminal Appeals defined the phrase "by using force against a peace officer or another" within the context of the statute. *Dobbs*, 434 S.W.3d at 173; *see also Finley*, 484 S.W.3d at 928. In that case, Dobbs was convicted of resisting arrest under section 38.03(a) after he held a gun to his head and threatened to shoot himself when officers attempted to arrest him. *Dobbs*, 434 S.W.3d at 173; *see also Finley*, 484 S.W.3d at 928. In determining whether the evidence was legally sufficient to support the defendant's conviction, the court found the word "force" required some sort of "violence, compulsion, or constraint exerted upon or against a person or thing," and the word "against" meant "in opposition or hostility to," "contrary to," "directly opposite," "in direction of and into contact with," or "in a direction opposite to the motion or course of." *Dobbs*, 434 S.W.3d at 173; *see also Finley*, 484 S.W.3d at 928. Applying a plain meaning approach, the court held the "use of force 'against' an officer must necessarily be in

opposition to, or in the direction of and/or in contact with, the officer himself, meaning the officer's physical person." *Dobbs*, 434 S.W.3d at 173; *see also Finley*, 484 S.W.3d at 928. The court further stated that "[a] use of force that is against the officer's goal of effectuating an arrest in the sense that it is hostile to or contrary to that goal, but that is not directed at or in opposition to the officer, is not covered by the plain terms of the statute." *Dobbs*, 434 S.W.3d at 173; *see also Finley*, 484 S.W.3d at 928. With these definitions in mind, the court ultimately held Dobbs's actions did not constitute resisting arrest because at no point did he use force against the officers. *Dobbs*, 434 S.W.3d at 173; *see also Finley*, 484 S.W.3d at 928.

Two years later in *Finley v. State*, the court revisited the application of the section 38.03(a), holding that a defendant "who actively pulled away" from an officer who was attempting to arrest him was resisting arrest. 484 S.W.3d at 928. In that case, there was evidence the defendant tried to pull his arm "forward towards his body — in the opposite direction from the officer's efforts" when an officer tried to handcuff him. *Id.* at 928–29.

### *Application*

Here, the jury heard testimony regarding Elahee's interaction with the officers from Officer Aleman, Officer Armstrong, Elahee's wife, and Elahee. Officer Aleman testified that when he first encountered Elahee, he detected a strong alcohol odor coming from Elahee, who immediately "told me to get out of his house." Officer Aleman described Elahee as 6' tall, weighing approximately 300 pounds. According to Officer Aleman, Elahee seemed aggressive because he repeatedly clenched his fists and refused to stand up when asked. Officer Aleman testified that out of precaution — primarily due to Elahee's size and demeanor — he placed Elahee in handcuffs and escorted him outside. Once Officer Armstrong arrived, both officers attempted to place Elahee in the patrol car; however, Elahee struggled, refusing to be placed in the car.

According to Officer Aleman, when he opened the patrol car door, Elahee kept "pushing off of it" with his body. Officer Aleman stated Elahee was "using his body to jerk back and we just couldn't place him inside the vehicle." As a result, a series of pushes occurred. Officer Aleman explained when Elahee pushed against the car, the officers pushed Elahee back, trying to push him into the car, resulting in Elahee pushing the officers back.

Officer Armstrong also described this series of pushes. According to Officer Armstrong, when they were attempting to put Elahee into the patrol car, Elahee "leaned back against me so I went back with him." Officer Armstrong stated that his "leaning back was the direct cause of what he [Elahee] did."

According to Elahee's wife, Elahee was "really aggressive." She described Elahee's aggressiveness as physical, stating he used his body against the police officers. "I saw his arms, you know, popping back and forth and his chest buffing forward and him being eye to eye with the gentleman." She also testified the officers tried to place Elahee in the patrol car multiple times, stating "[t]here was a lot of struggle." When specifically asked whether Elahee pushed or pulled back towards the officers, she testified, "Yes, there was a lot of body movement, a lot of resistance, a lot of his body coming up against their bod[ies]."

The jury also heard testimony from Elahee himself. Elahee testified when Officer Aleman arrived, he was startled and asked the officer to leave. Elahee testified the officer left, but returned and the two of them talked in his doorway. According to Elahee, he walked outside with the officer, at which point another officer arrived. Elahee testified the officers told him he was going to be arrested, and then an officer grabbed his arm and swung it behind his back. When he asked why he was being arrested, an officer jumped on his back and yelled at him to stop resisting and then tased him repeatedly. Elahee further testified that at no point did he resist being arrested;

rather, he simply did not assist the officers because he just sat down and refused to move. Elahee also denied that the officers tried to place him in the patrol car.

Viewing this evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that Elahee used force against Officer Aleman. *See Dobbs*, 434 S.W.3d at 170; *Ford*, 444 S.W.3d at 177. Here, the jury heard evidence that Elahee pushed back against the patrol car and both of the officers to avoid being placed inside the car. Both officers and Elahee's wife testified Elahee used his body against the officers, directly pushing against Officer Aleman in the process. Although Elahee denied that the officers tried to place him in the patrol car or that a struggle occurred, the jury was free to reject his testimony and accept the testimony of the officers and Elahee's wife that Elahee physically used his body against both of the officers to avoid being arrested. *See Lancon*, 253 S.W.3d 707.

With regard to Elahee's argument that his actions did not constitute force against Officer Aleman, but rather force against Officer Aleman's "broader goal of effectuating an arrest," we disagree. In *Finley*, the Texas Court of Criminal Appeals recently highlighted the broad definition of force, specifically holding that "pulling away from an officer satisfies the 'in opposition or hostility to' the police officers requirement," and thus, constitutes force against an officer. 484 S.W.3d at 928. Here, there was evidence Elahee used force to resist being arrested by pushing away from the patrol car and Officer Aleman. Accordingly, we hold a reasonable trier of fact could have found beyond a reasonable doubt that much like pulling away from an officer, pushing against the patrol car and the officers constitutes force against an officer under section 38.03. *See id.* Officer Aleman specifically testified Elahee used his body to "jerk back" when he tried to push Elahee into the car. Officer Aleman further testified "he actually pushed us back," causing both his and Officer Armstrong's bodies to move. Accordingly, when viewing this evidence in the light

most favorable to the verdict, we conclude Elahee, much like the defendant in *Finley*, used force against Officer Aleman. *See id.*

## CONCLUSION

Based on the foregoing, we overrule Elahee's sole point of error and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish