

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00873-CR

Anthony Arlanders **ROSS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR12490
Honorable Velia J. Meza, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Luz Elena D. Chapa, Justice
Beth Watkins, Justice

Delivered and Filed: September 23, 2020

AFFIRMED

A jury found appellant Anthony Arlanders Ross ("Ross") guilty of manslaughter and assessed punishment at confinement for ten years. In a single issue, Ross argues the evidence is legally insufficient to support the guilty verdict. We affirm the trial court's judgment.

## Background

On the evening of March 16, 2016, Jemichal Hardy, his girlfriend Raven, and Raven's two children were watching television in the house Jemichal shared with Ross in San Antonio. Ross arrived at the house and had a friendly conversation with Jemichal for about fifteen to twenty

minutes while Raven, who was seated nearby, looked at Facebook on her cell phone. As the men were talking, Ross retrieved a handgun. Raven testified she heard Ross load the gun, but he never handed it to Jemichal. Raven was listening to Ross and Jemichal discussing oiling the gun so it could fire better when "the gun just went off." Raven looked up from her cell phone at the sound of the gunshot, but she did not see whether Ross's finger was on the gun's trigger. Jemichal had been shot in the face and appeared to have died instantly. Raven and Ross took the children outside, and Raven called 9-1-1.

San Antonio Police Detectives Ronald Lee Haley and Robert Bunnell were dispatched to the scene. Ross approached Detective Haley as he pulled up to the house and said: "I got to tell you something. I accidentally shot somebody." Ross was distraught but cooperative, so Detective Haley placed him in handcuffs to keep Ross and everyone else safe. Both detectives entered the house. Detective Bunnell observed a magazine clip "some distance" away from Jemichal's body and a .40 caliber Smith & Wesson handgun. Detective Bunnell testified the handgun is the same make and caliber used by police, and these guns are very unlikely to discharge accidentally. The specific gun used to shoot Jemichal had a 10.5-pound trigger pull weight, which is even harder to fire than the guns used by police. Subsequent testing revealed the presence of gunshot residue on Jemichal's hands, which Detective Bunnell testified is consistent with Jemichal holding his hands up before being shot in the face. Detective Bunnell explained: "[M]y surmise was [Jemichal] sees a gun right here, puts his hands up and . . . [a]ll that garbage and debris, smoke and gas comes out of the barrel, and it's going to hit him in the face and hit him in his hands." In Detective Bunnell's opinion, the shooting was not accidental.

Detective Haley drove Ross to the police station, where he was interviewed by San Antonio Police Detective Randall Hines. Detective Hines testified Ross entered the interview room weeping. Ross told the detective he and Jemichal were discussing the weights of their respective

guns when Ross handed his gun to Jemichal for comparison. Jemichal removed the gun's magazine clip, and then, holding the gun through his shirt with the barrel facing himself, handed the gun back to Ross. Ross told Detective Hines that Jemichal "put the gun in my hand, and it went off." Detective Hines testified Ross's story did not make sense because, if it were true, "I would have expected a lower body torso area" wound. In addition, if Jemichal had removed the gun's magazine clip, Detective Hines would expect the clip to be somewhere near Jemichal's body, rather than across the room. Detective Hines agreed with Detective Bunnell that the .40 caliber Smith & Wesson did not have a "hair trigger," but rather a heavy, 10.5-pound trigger pull.

Dr. Samantha Evans, a forensic pathologist for the Bexar County Medical Examiner's Office, performed Jemichal's autopsy. Dr. Evans determined Jemichal died as a result of a gunshot wound, with the bullet entering just below Jemichal's right eyebrow and exiting the back of his head. Jemichal's injury did not indicate the barrel of the gun was pressed against his skin or within one to three inches of his skin when it fired, but it is unclear whether Jemichal was shot from a few inches or a few feet away. Evidence of gun powder grains were found around Jemichal's wound but not on his clothing, and there were no powder burns on Jemichal's hands. Dr. Evans determined the manner of Jemichal's death was homicide.

Edward Wallace, the forensic scientist supervisor in the firearm section of the Bexar County Criminal Investigation Laboratory, testified the handgun used to shoot Jemichal was not mechanically or physically defective in any way. Therefore, the only way to discharge the gun would be to manually pull the trigger. The gun's trigger pull weight is between 10.5 and 11 pounds, which represents the amount of force that must be applied to the trigger in order to fire the weapon. Wallace testified 10.5 pounds is "fairly heavy" and "to the heavier end of the trigger pull range." Although the magazine clip had been removed from the gun before it fired, Jemichal was shot with a round left in the chamber.

Ross testified in his own defense, stating he and Jemichal were very good friends, like brothers. Ross testified he bought his gun from Jemichal about two weeks before Jemichal was shot, and Jemichal wanted to compare the weight of Ross's gun to the weight of Jemichal's new gun. Ross handed his gun to Jemichal, who removed the magazine clip and began comparing the guns. Jemichal then startled Ross by stating "Huh, Ross," and handing the gun back to Ross while holding it in both hands through his shirt. Jemichal's hands were under his shirt, which partially obscured the gun from Ross's view. Ross reached out and grabbed the gun and Jemichal's shirt and fingers all at once. Then the gun "went off" without Ross realizing he had grabbed or pulled the trigger. Ross testified he does not have a concealed handgun license and has never taken any firearm safety courses. Ross is familiar with some of the fundamental rules of firearm safety, like never pointing a gun at someone else and always acting as if a gun is loaded, and he agreed those rules are common sense. He agreed handing his gun to Jemichal without checking to see whether it was loaded and while there were children present was "pretty reckless." Ross also agreed grabbing the gun while Jemichal was holding it through his shirt was "pretty reckless" as well.

At the conclusion of trial, the jury found Ross guilty of manslaughter. Ross appeals.

**Standard of Review**

When considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Mayberry v. State*, 351 S.W.3d 507, 509 (Tex. App.—San Antonio 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Whether the evidence is legally sufficient is a question of law, and we will not overturn the verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *See Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

We apply this standard of review to a hypothetically correct jury charge. *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), cert. denied, 565 U.S. 1262 (2012). The offense charged in this case was manslaughter. "A person commits [the] offense [of manslaughter] if he recklessly causes the death of an individual." TEX. PENAL CODE ANN. § 19.04(a). "A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

## Discussion

Ross argues the evidence is insufficient to support the verdict because the State did not prove who pulled the trigger, and the jury was required to speculate as to how Jemichal actually was shot.

The jury is the sole judge of the weight and credibility to assign to witness testimony. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). The jury may choose to believe all, none, or any part of a witness's testimony, even if other evidence in the record contradicts that testimony. *Dossett v. State*, 216 S.W.3d 7, 31 (Tex. App.—San Antonio 2006, pet. ref'd) (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)). The jury also may draw reasonable inferences from the facts so long as each inference is supported by evidence in the record. *Tate*, 500 S.W.3d at 413. The jury may not, however, draw conclusions based on speculation. *Id.* "Unlike a reasonable inference, speculation is insufficiently based on the evidence to support a finding beyond a reasonable doubt." *Id.* When the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of its verdict. *Id.*

Here, although Ross testified the gun just "went off," there is evidence in the record reasonably supporting an inference that Ross recklessly pulled the trigger, causing Jemichal's death. Raven testified she did not hear Jemichal ask for Ross's gun, and Ross had possession of the gun "the entire time" he and Jemichal were discussing it. Ross himself told Detective Haley at the scene: "I accidentally shot somebody." Detectives Bunnell and Hines as well as Edward Wallace testified the gun that shot Jemichal had a 10.5-pound trigger pull weight, which is "fairly heavy" in order to prevent accidental firing. Wallace testified the gun was not mechanically or physically defective and its safety features were working correctly, so he had no reason to believe the gun would discharge accidentally. In fact, Detective Bunnell testified the police drop the same make and caliber handguns from helicopters at three hundred feet just to make sure they do not accidentally discharge when dropped. He agreed "simply slapping [the gun], grabbing it, dropping it" would not have caused it to accidentally discharge and testified it is "near impossible" to accidentally discharge that gun.

The jury also could reasonably disbelieve Ross's version of events. Although Ross testified he believed the gun was not loaded because Jemichal removed the magazine clip, the clip was not recovered near Jemichal's body. Raven testified Ross asked "where the bullets were" when he entered the house, and she heard Ross load the gun before Jemichal was shot. Again, Raven testified Jemichal never had the gun in his hands. And while Ross testified Jemichal handed him the gun with both hands under his shirt, Jemichal was shot in the face, not in his torso or through his shirt. Dr. Evans testified Jemichal's injury was not consistent with the gun's muzzle being only one to three inches away from the bullet's entry point. Detective Bunnell testified gunshot residue was present on Jemichal's hands, which he believed was consistent with Jemichal raising his hands up before being shot in the face. The jury reasonably could have inferred Jemichal would not have gunshot residue on his hands if they were inside his shirt, as Ross claimed.

But even accepting Ross's version of events, Ross himself admitted he voluntarily "grabbed" the gun from Jemichal while fully aware the gun barrel was pointed at Jemichal. Ross knew it is common sense not to point a gun at another person and to never assume a gun is unloaded.

"In determining whether the evidence supports a finding of recklessness, a statement that a defendant did not intend to kill the victim 'cannot be plucked out of the record and examined in a vacuum.'" *Gahagan v. State*, 242 S.W.3d 80, 86 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (quoting *Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986)). "Courts have upheld jury findings that a defendant consciously disregarded a substantial and unjustifiable risk in numerous situations involving allegedly accidental discharge of a firearm." *Id.* (compiling authorities). For instance, where the defendant was familiar with guns and knew she should never point a gun at another person even if she believed, as she claimed, the gun was not loaded, the jury was entitled to disbelieve the defendant's "benign description of the incident" and instead conclude the defendant was conscious of the risk of her actions. *See id.* at 88. Similarly, here, Ross admitted he knew not to point a gun at another person and that it was reckless to grab the gun from Jemichal while the barrel was pointed directly at Jemichal. Therefore, even accepting Ross's version of events, the jury reasonably could conclude Ross recklessly caused Jemichal's death.

For these reasons and in light of all the evidence in the record, we conclude the evidence is sufficient to support the jury's conclusion that Ross committed manslaughter by recklessly causing Jemichal's death. We overrule Ross's sole issue.

### Conclusion

Having overruled Ross's sole issue, we affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH