

# NUMBER 13-19-00247-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JEROME WENDALL ELLIS,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

### On appeal from the 377th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Justice Tijerina**

A jury found appellant Jerome Wendall Ellis guilty of murder and tampering with physical evidence and assessed punishment at ninety-nine and twenty years' imprisonment, respectively, with the sentences to run concurrently. *See* TEX. PENAL CODE ANN. §§ 19.02, 37.09(a)(1), (d)(1). By three issues, Ellis argues: (1) the evidence is

insufficient to support his murder conviction[1], (2) his trial counsel provided ineffective assistance, and (3) the trial court erred by denying his motion in limine to exclude evidence regarding an extraneous offense. We affirm.

## I.   BACKGROUND

### A.   Cantu's Testimony

On April 30, 2016, Roxana Menefee died in the driver's seat of her vehicle from a fatal gunshot wound to her head. Marjorie Cantu, Menefee's friend and coworker, testified that Menefee was in a romantic relationship with Lamar Williams. Cantu stated that she knew Ellis because Menefee had previously dated him. While Menefee dated Ellis, Cantu recalled seeing a bloody eye, bruises, and scratches on Menefee's face, arms, legs, and knees.

On April 29, 2016, Cantu remembers drinking wine with Menefee around 7:00 p.m. at Cantu's boyfriend's house. Cantu stated she went to bed and awoke around 11:00 p.m. to the sounds of Ellis and Menefee arguing. According to Cantu, Menefee was "trying to keep the situation light, and [Ellis] was upset." He was "squared off, hollering, [and had an] angry look on his face . . . shoulders thrown back." Cantu told Menefee and Ellis that they needed to leave Cantu's boyfriend's house because "of their previous engagements, [and] the way they treated each other with the children [present]," so she offered to watch Menefee's son at the house. Menefee and Ellis left, and that was the last time Cantu saw her.[2] Cantu stated she went back to bed, but Menefee's son woke her at 6:00 a.m. stating

---

[1] Ellis does not challenge the legal sufficiency of the evidence supporting his conviction for tampering with physical evidence.

[2] Cantu testified that Menefee left her shoes, purse, and other personal belongings at Cantu's boyfriend's house before she left with Ellis.

2

Menefee was still not home yet. Cantu stated that Menefee loved herself, she loved her son, she was not upset with herself, and believed that Menefee did not attempt to take her own life.

**B.      Garcia's Testimony**

Ramiro D. Garcia testified that Ellis lived across the street from him. He stated that on April 29, Ellis and Menefee spent some time together throughout the day. Around 1:00 a.m. on April 30, Garcia and Ellis were drinking beer outside Garcia's home. Garcia knew Menefee and Ellis had previously dated and the two had experienced problems in the past. When Garcia saw a car's headlights coming down the street, Ellis told him it was Menefee, so Garcia went inside the home. Garcia heard music, talking, yelling, arguing, and screaming from outside. He then heard "like a pop," which sounded like a gunshot. When he opened the door, he saw Ellis running to Garcia's house stating that Menefee shot herself. Garcia told Ellis to leave; he did not want to be part of the situation. He closed the front door, took his daughter to a back room, and told his ex-wife to call 9-1-1. Garcia then looked out the front door window and saw Ellis running around to the passenger side of the car "frantically." According to Garcia, Ellis called him after the shooting, but Garcia did not answer because he "was kind of freaking out about the whole situation." Garcia told police officers Ellis was wearing a blue shirt, blue jean shorts, and black Nike tennis shoes.

**C.      Law Enforcement Testimony**

Victoria Police Department Sergeant James Poe testified that when he approached Menefee's vehicle, he "saw a female seat-belted in the driver's seat slumped

3

to the right side with blood coming out of her head and pooling in the center console." The engine was still running. Sergeant Poe stated that in his cursory search of the crime scene, he did not find a firearm, expended ammo, or expended projectiles. Based on a hole in the driver's side window, Sergeant Poe believed a small caliber firearm was used. He approached Ellis at Ellis's father's home. Ellis was wearing a red t-shirt, blue jeans, and white sneakers. Ellis asked Sergeant Poe, "What's going on?" and "why is [Menefee's] car over there?" at least twice before he asked Sergeant Poe about why he approached Ellis. Sergeant Poe's body camera video footage was admitted into evidence and played for the jury showing the above-described interaction.

Officer Brian Fulton first responded to Menefee upon his arrival at the crime scene. He noticed the doors to her vehicle were closed, and Menefee was secured to her seat by her seatbelt. Officer Fulton stated Menefee did not have a pulse and was unresponsive. He removed her seatbelt and began administering CPR. Officer Fulton noticed a significant amount of blood in the console and the right portion of the driver's seat. Officer Fulton made his way into Ellis's father's home. Ellis stated, "I ain't even seen [Menefee,]" and he appeared very relaxed. Officer Fulton's body camera footage, corroborating his testimony, was also played for the jury.

Crime Scene Technician Kelly Sebby recovered Menefee's broken cellphone, which was located inside Ellis's father's living room. Sebby testified that the phone was "taken on each end and flipped in [the middle to two] half [pieces]." Attached to the cell phone was a pink cellphone cover, which was sent for a DNA analysis. The remaining piece of the cellphone cover was recovered on Ellis's kitchen counter.

4

Detective Joseph Felan stated that his cyber unit performed over thirty forensic downloads of electronic media in this case. He found Ellis's black Nike tennis shoes about seven to ten feet away from Garcia's backyard. Further, Detective Felan stated there was bark scraped off the trees on the other side of Garcia's fence, as though someone grabbed the bark to climb over the fence.

A detailed diagram of Ellis's and Menefee's phone records was prepared and shown to the jury. Detective Felan explained that the timeline on the downloads was created from thousands of pages that included data from phone calls, text messages, dispatch calls, et cetera. He detailed numerous text messages between Menefee and Ellis leading to the shooting. Detective Felan stated the following: (1) a few days before the shooting, Ellis sent messages referencing "his pistol"; (2) Ellis sent his ex-wife a picture of himself with a pistol days before the shooting; (3) Menefee called Ellis at 1:18 a.m., which lasted 58 seconds; (4) Garcia's wife called 9-1-1 at 1:33 a.m. to state Menefee was shot; (5) Ellis made a five-second call to Menefee at 1:33 a.m.; (6) Ellis called Garcia at 1:36 a.m., which was unanswered; (7) Ellis sent Menefee a text message at 1:41 a.m. asking, "Are you on the way babe"; (8) police arrived at 1:42 a.m.

## D.   Dr. Perez's Testimony

Forensic pathologist Danielo Perez, M.D., performed an autopsy wherein he concluded Menefee died from a gunshot wound to the head. Menefee was found slumped over in the driver's side of her vehicle. Dr. Perez determined that a small-caliber gunshot entered Menefee's right temple and exited through the left side. Based on the angle of the shot with a path of right to left, back to front, and slightly upward, Dr. Perez asserted

5

the shot would have to have been made from the passenger seat area. Dr. Perez opined that the trajectory of the bullet, in combination with Menefee being left-handed and the police not locating a gun at or near Menefee's car, supported his conclusion that this case was a homicide.

### E.    Williams's Testimony

Williams stated that he had been in a steady relationship with Menefee since January 2016. According to Williams, when they would get into arguments, Menefee always seemed afraid. For example, when he would walk up to her to apologize, she would flinch and step back from him. At the time of her death, Menefee and Williams lived together. Williams testified he was with Menefee on April 29 between 11:00 p.m. and midnight. Thereafter, Menefee left the residence while Williams remained.

### F.    Verdict

Although Ellis did not testify, his defense during opening statement, cross-examination, and closing argument was that Menefee was so intoxicated that she accidentally shot herself or committed suicide. A jury convicted him of murder and tampering with evidence. *See id.* Ellis filed a motion for new trial, and it was overruled by operation of law. The jury assessed punishment at ninety-nine years imprisonment for murder and twenty years imprisonment for tampering with physical evidence. This appeal followed.[3]

---

[3] On June 4, 2019, the Texas Court of Criminal Appeals granted Ellis's petition for writ of habeas corpus seeking permission to file an out-of-time appeal. *Ex parte Ellis*, No. WR-89,027-02, 2019 WL 2135622 (Tex. Crim. App. May 8, 2019) (per curiam).

## II.    LEGAL SUFFICIENCY

By his first issue, Ellis argues the evidence presented at trial was legally insufficient to prove that he was guilty of murder.

## A.    Standard of Review

When considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Mayberry v. State*, 351 S.W.3d 507, 509 (Tex. App.—San Antonio 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Legal sufficiency is a question of law, and we will not overturn the verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *See Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). We apply this standard of review to a hypothetically correct jury charge. *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not necessarily increase the State's burden of proof, unnecessarily restricts the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). The offense charged in this case was murder: a hypothetically correct jury charge would instruct the jury that Ellis is guilty of the offense "if he . . . intentionally or knowingly cause[d] the death of" Menefee. *See* TEX. PENAL CODE ANN. § 19.02(b)(1).

Circumstantial evidence alone may be sufficient to establish guilt. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013); *Hines v. State*, 383 S.W.3d 615, 623 (Tex.

App.—San Antonio 2012, pet. ref'd). "In circumstantial evidence cases, it is not necessary that every fact and circumstance 'point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.'" *Temple*, 390 S.W.3d at 359 (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)). The jury may draw reasonable inferences from the evidence in the record but may not draw conclusions based on speculation. *Id.* at 360. When the record supports conflicting inferences, we presume the jury resolved any conflicts in favor of the verdict and defer to that resolution. *Id.* (citing *Jackson*, 443 U.S. at 326).

## B.    Discussion

First, Ellis argues that the evidence is legally insufficient because there were no witnesses who saw Ellis shoot Menefee. But eyewitness testimony is not required to prove murder. *See Gardner v. State*, 306 S.W.3d 274, 285–86 (Tex. Crim. App. 2009) (concluding that the evidence was sufficient to prove beyond reasonable doubt that the defendant murdered the victim despite the lack of eyewitness testimony that defendant did so). Garcia testified that he heard Ellis and Menefee arguing and yelling outside his home before he heard a gunshot and saw Ellis frantically running around the vehicle. When he looked outside, he saw Ellis running up to Garcia's house telling him that Menefee shot herself. Garcia did not see anyone else in the vicinity of the vehicle; there was no other traffic in that area. A rational juror could have found that Ellis was the only person in Menefee's presence at the time of the shooting. *See Clayton v. State*, 235 S.W.3d 772, 782 (Tex. Crim. App. 2007) (holding that a rational juror could find defendant

8

committed murder beyond a reasonable doubt when evidence indicating that no one other than the defendant was with the victim during the final minutes of his life).

Next, Ellis argues that the evidence was legally insufficient because he has always maintained that Menefee shot herself. In his brief, Ellis states that Menefee "was playing with a gun and accidentally shot herself." However, contrary to Ellis's theory, Dr. Perez concluded that Menefee's case was a homicide—not a suicide. From her autopsy, Dr. Perez concluded that the bullet entered Menefee's right temple and exited her left temple with an upward trajectory. In other words, the shot appeared to have been made from the passenger side of the vehicle. Although Ellis claimed he did not own a gun, days before the shooting, he texted a picture of himself with a small caliber handgun to his ex-wife, which Dr. Perez concluded was the same size gun used to cause Menefee's death. Thus, a rational juror could have found that Menefee was not "playing with a gun and accidentally shot herself," as Ellis suggests.

Ellis asserts that the lack of blood or gunshot residue on his body, clothing, or shoes absolves him of murder. We disagree. The State was not required to disprove all reasonable alternative hypotheses inconsistent with Ellis's guilt to present legally sufficient evidence to support the jury's guilty verdict. *See Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018) (holding that the evidence does not need to exclude every conceivable alternative to the defendant's guilt to be legally sufficient). Nonetheless, the evidence at trial established that Ellis changed his clothing before police interviewed him. A reasonable juror could have inferred that his change of clothes accounted for the lack of blood or gunshot residue on Ellis's clothing or body. Moreover,

9

Detective Felan stated that he found black Nike tennis shoes seven to ten feet away from and over Garcia's fence, indicating they were thrown over the fence, and a reasonable juror could have also inferred that Ellis tossed his tennis shoes over the fence. Furthermore, no firearm, expended ammo, nor expended projectiles were found near Menefee, and a rational juror could have concluded that Ellis concealed the gun to hide incriminating evidence. *See Temple v. State*, 342 S.W.3d 572, 590 (Tex. App.—Houston [14th Dist.] 2010) (concealing incriminating evidence is circumstantial evidence of guilt), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013).

Lastly, Ellis states that there was no testimony of any friction between him and Menefee and that Garcia's testimony that Menefee and Ellis had a good day together supports this position. But the record overwhelmingly provides numerous instances of "friction" between the two. The jury heard evidence that Cantu asked Ellis and Menefee to leave from her boyfriend's house because they were arguing, and because she knew it could escalate due to their history. Cantu testified she had previously observed a bloody eye, bruises, and scratches on Menefee's body during the time she was dating Ellis. Garcia also testified he was aware of Ellis and Menefee's "problems" and their "fighting." And Williams stated that Menefee would flinch when he would go near her, and she appeared afraid when they would argue. Detective Felan provided detailed explicit text messages between Menefee and Ellis, including one in which Ellis told Menefee she was dead to him, and Menefee responded, "Hey I like pink make sure my casket is pink."

The jury also heard evidence that Ellis appeared carefree and relaxed moments after the murder. In fact, one officer testified that Ellis even fell asleep on the couch while

10

officers investigated the crime scene area outside the home. When interviewed by police, Ellis claimed he was inside his house waiting for Menefee, never saw Menefee's car arrive, did not hear a gunshot, and did not know anything had happened until he looked outside his window and saw emergency lights and police cars. Yet, Menefee's broken cell phone and phone case were recovered from inside Ellis's home. Additionally, Garcia testified that Ellis told him that Menefee had shot herself. The jury was able to assess the credibility and demeanor of the witnesses who testified at trial, and it was free to reject Ellis's exculpatory explanations. *See Temple*, 390 S.W.3d at 360. Here, a substantial amount of incriminating evidence reasonably supports the jury's conclusion that Ellis was not only present at the crime scene but also caused Menefee's death. Therefore, viewing all the evidence in the light most favorable to the verdict we conclude that a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *See Mayberry*, 351 S.W.3d at 509. We conclude the evidence is legally sufficient to support the guilty verdict. Ellis's first issue is overruled.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Ellis claims he received ineffective assistance of counsel.

## A. Standard of Review

To prevail on a claim of ineffective assistance of counsel, Ellis must establish by a preponderance of the evidence that: (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) Ellis was prejudiced by trial counsel's defective performance. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). To determine whether trial counsel's

performance was deficient, we look to the totality of the representation and the particular circumstances of the case. *Id.* at 813.

Our review of trial counsel's performance is "highly deferential," and we indulge a "strong presumption" that trial counsel's conduct fell within the wide range of reasonable representation. *Id.* "To defeat the presumption of reasonable professional assistance, 'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Id.* at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Consequently, a direct appeal is usually an inadequate vehicle for raising a claim of ineffective assistance of counsel because the record is generally undeveloped as to the reasons for trial counsel's actions. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson,* 9 S.W.3d at 814 n.6 ("[I]n the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland.*"). Where, as here, the record is silent as to trial counsel's strategy, we will not conclude Ellis received ineffective assistance of counsel unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed*, 187 S.W.3d at 392 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). When a defendant asserts ineffective assistance of counsel in a motion for new trial, we review the trial court's denial of the motion for an abuse of discretion. *Tieu v. State*, 299 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). A trial court abuses its discretion in denying a motion for new trial when no reasonable view of the record could support the trial court's ruling. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim.

12

App. 2012).

**B.     Discussion**

### 1.     Defense Theory

Ellis first complains his trial counsel was deficient by failing "to develop the trial strategy in line with the truth; that Menefee was intoxicated and accidentally shot herself." Yet, that was precisely Ellis's defense at trial. Trial counsel emphasized Menefee's level of intoxication with numerous witnesses, especially Dr. Perez. Trial court emphasized Menefee's intoxication in closing argument as well. Thus, the record provides that trial counsel, indeed, reasonably developed Ellis's trial strategy, and we decline to find trial counsel was deficient in this regard.

### 2.     Failure to Object

Next, Ellis complains his trial counsel "failed to object to unsubstantiated and inflammatory testimony by Williams that [Ellis] was a gang member." First, there is no indication in the record regarding the reasons trial counsel may have had for refraining from objecting to the gang evidence. *See Thompson*, 9 S.W.3d at 808 (providing that appellant must present direct evidence of trial counsel's subjective motivations in order to overcome the presumption of reasonable conduct). Second, trial counsel addressed the gang-related testimony on cross-examination and may have decided that it was better trial strategy to challenge the gang-related testimony on cross-examination than to object to its admission. *See Strickland*, 466 U.S. at 689 (holding that the defendant must overcome strong presumption that failure to object might be considered sound trial strategy); *see also Vela v. State*, No. 13-98-195-CR, 1999 WL 33757553, at *1 (Tex.

13

App.—Corpus Christi–Edinburg June 24, 1999, no pet.) (mem. op., not designated for publication) (concluding that trial counsel may have decided that it was better trial strategy to challenge the basis of the gang testimony on cross-examination than to object to its admission). To find trial counsel ineffective based on the record before this Court would require speculation. *See Epps v. State*, 24 S.W.3d 872, 881 (Tex. App.—Corpus Christi–Edinburg 2000, pet ref'd) (refusing to find ineffective assistance of counsel when the record did not provide the reasons trial counsel may have had for refraining from objecting to the gang evidence).

Regardless, the gang-related testimony was only a small percentage of the total evidence introduced during the trial of the case, and "there was ample evidence to support a reasonable jury's finding of guilt." *Ex Parte Martinez*, 330 S.W.3d 891, 904 (Tex. Crim. App. 2011). When the gang-related testimony is disregarded, the remaining evidence against Ellis, in its totality, is strong and would support a finding by the jury that he murdered Menefee. There was evidence that Ellis was present before, during, and after the murder; that Ellis and Menefee were arguing and yelling prior to the murder; that Ellis sent Menefee a text message and placed a phone call to her right after the murder; that he concealed the weapon; that he adamantly questioned what was going on, why police was there, and the events that took place; that he changed his clothing and tossed his tennis shoes in an effort to conceal evidence; that he failed to call 9-1-1 for assistance; that he was in possession of a small caliber handgun of the size used to kill Menefee; that he appeared carefree, relaxed, and fell asleep during the investigation after claiming Menefee committed suicide; that he broke Menefee's cell phone prior to the shooting,

14

which was recovered in Ellis's home; and that he lied about the events of the evening of the shooting. We cannot say that there is a reasonable probability that the outcome would have been different if trial counsel had objected to the gang-related minutiae. *See id.* at 904. It is unlikely, in the face of all the evidence with which the jury was presented, that the jury would have reached a different conclusion in the absence of the gang-related evidence. *See, e.g. id.*

### 3. Expert

Ellis additionally complains that his trial counsel did not retain the services of a gunshot residue expert. Because Ellis failed to present any guilt-innocence mitigation evidence with the motion for new trial, Ellis has failed to demonstrate how the failure to seek the services of an expert prejudiced his defense. To determine whether Ellis was prejudiced, we must "compare the evidence presented by the State with the 'evidence the jury did not hear due to trial counsel's failure to investigate.'" *Perez v. State*, 310 S.W.3d 890, 896 (quoting *Butler v. State*, 716 S.W.2d 48, 56 (Tex. Crim. App. 1986)). We are unable to do so because Ellis did not show what evidence a gunshot residue expert would have revealed, nor what benefit could have been obtained from this expert. *See Ex parte McFarland*, 163 S.W.3d 743, 755 (Tex. Crim. App. 2005) (finding no prejudice for failure to investigate a witness when there was no showing or suggestion that the witness would have told anyone of the contradictory version of events before trial); *Brown v. State*, 334 S.W.3d 789, 803 (Tex. App.—Tyler 2010, pet. ref'd) ("[T]he failure to request the appointment of an expert witness is not ineffective assistance in the absence of a showing that the expert would have testified in a manner that benefitted the defendant."); *Cate v.*

15

*State*, 124 S.W.3d 922, 927 (Tex. App.—Amarillo 2004, pet. ref'd) (same). We overrule Ellis's second issue.

## IV.  MOTION IN LIMINE

By his third issue, Ellis argues the trial court abused its discretion by denying his motion in limine and admitting evidence of a prior burglary of a habitation conviction. The State asserts that Ellis waived error because the same evidence was admitted from another source without objection.

A motion in limine, whether granted or denied, does not preserve error. *Jaynes v. State*, 216 S.W.3d 839, 850 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.). To preserve a challenge to the trial court's admission of evidence, the complaining party must have lodged a timely objection and have obtained an adverse ruling. TEX. R. APP. P. 33.1(a). "[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Reckart v. State*, 323 S.W.3d 588, 596 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); ("The admission of the same evidence from another source, without objection, waives previously stated objections.").

The trial court held a hearing wherein it ruled that the State was allowed to introduce a penitentiary packet, judgment, and sentence for Ellis's prior felony conviction of burglary of a habitation for the sole purposes of impeachment.[4] At trial, Ellis objected to the admission of this evidence. The trial court admitted the evidence but gave the jury

---

[4] The trial court granted Ellis's motion in limine "as to [the] prior beating of the victim."

16

a limiting instruction, which instructed the jury to consider the evidence for the sole purposes of impeachment. Thereafter, the following exchange occurred between the State and Detective Felan:

> [State]: Okay. Was [Ellis] implicated or involved in a series of burglaries in and around Bonham Street?
>
> [Detective]: Yes, sir.
>
> [State]: Was he eventually convicted of the same?
>
> [Detective]: Yes, sir.
>
> [State]: Was he involved in an aggravated robbery of Cesar Hernandez of Cesar Taxi?
>
> [Detective]: I've learned he was.
>
> [State]: Was he involved in several felony thefts?
>
> [Detective]: Yes, sir.
>
> [State]: Was he involved in indecency by contact of [H.W.] and [M.S.] both neighbors on Bonham Street?
>
> [Detective]: Yes, sir.
>
> [State]: While they were underage?
>
> [Detective]: (Nods head affirmatively.)
>
> [State]: Was he involved in an injury to a child, the shattering of [B.C.'s] jaw?
>
> [Detective]: Yes, sir.
>
> [State]: Was he involved in evading arrest or detention with a prior evasion?
>
> [Detective]: Yes, sir.

Ellis did not object to this testimony. In his reply brief, Ellis concedes that he "wholly failed

to object to the detective's testimony" "regarding [his] prior charges and convictions, including theft, and robberies." *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (stating that error in the admission of evidence is cured where the same evidence comes in elsewhere without objection); *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (concluding the admission of the same evidence without objection rendered the improperly admitted evidence harmless). Therefore, Ellis waived his argument regarding the admission of the burglary of a habitation felony conviction by allowing Detective Felon to testify regarding the same without objection and not pursuing the objection to an adverse ruling. *See Reckart*, 323 S.W.3d at 596. We overrule Ellis's third issue.

## V. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
25th day of March, 2021.

18